**Dorothea N. HORNBUCKLE,**
Plaintiff-Appellant,

v.

**ARCO OIL & GAS COMPANY,**
Defendant-Appellee.

No. 83–1435.

United States Court of Appeals,
Fifth Circuit.

May 24, 1984.

Frank P. Hernandez, Dallas, Tex., for plaintiff-appellant.

Thompson & Knight, Bennett W. Cervin, Arlene Switzer Holcomb, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

When the trial court reached this employment discrimination case, the plaintiff's lawyer simply refused to start the trial. The court ordered the plaintiff to reimburse the defendant those fees and expenses incurred in preparation for the scheduled trial that had been, in effect, wasted as a result of the necessity for rescheduling the trial. When she failed to do so, the court dismissed the suit. The plaintiff protests that she is financially unable to pay the amount ordered and that the order was therefore impossible for her to perform. Affirming the trial judge's power to impose sanctions on either counsel or client, as may be appropriate, we remand the case so that the trial court may assess the plaintiff's ability to pay the sum ordered and, if she cannot, to consider the appropriateness of other sanctions against her or her counsel.

### I.

Dorothea N. Hornbuckle, a black female who was employed by Arco Oil & Gas Company as its Equal Opportunity Affairs coordinator, contends that Arco discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. While working for Arco, Hornbuckle had access to confidential company information and documents. After her suit was filed, Arco requested that she produce at an oral deposition all documents that she had obtained or created in the course of her employment. After some delay, Hornbuckle produced 4,000 pages of such documents. Hornbuckle's deposition was taken at exhaustive length. She was interrogated for eight days and questioned about individual documents in wearisome detail. She testified that she had taken some of these documents home and had inadvertently failed to return them. Others were her own notes about company matters on which she had worked, some made during working hours at Arco's office and some made at home. Arco asserted its right to retain these documents, but the company did offer to make them available for examination by Hornbuckle's lawyer, Hernandez. The magistrate ordered that the documents be returned to Hornbuckle because Arco's counsel had obtained them by representing to Hernandez that they would be returned

after Hornbuckle's deposition. The court, however, ruled that Arco had a right to keep the documents, though it must make them available to Hornbuckle for review during reasonable hours.

The discovery proceedings continued to be tendentious, and, in the course of them, the district court imposed sanctions on Hornbuckle for her failure to comply with discovery requests. Trial was set in the busy district court for June 21, 1982. On June 11, Hornbuckle sought a continuance, which resulted in trial being rescheduled for November 29. A month before the new date, Hornbuckle sought another continuance, and the trial was set for the week beginning April 18, 1983. Eleven days before that date, Hornbuckle sought yet another continuance. This was denied. Due to the scheduling of other trials, however, the court was unable to begin the trial on April 18; it informed counsel that it would carry the case on the docket until the next week. The court later advised counsel that the trial would begin on April 27 at 1:00 p.m. Hernandez, Hornbuckle's lawyer, did not object.

Hernandez was also counsel in a case scheduled to be tried on April 26 in federal district court in Fort Worth. He had never informed either judge of a possible schedule conflict. On April 26, he simply announced to the judge in Fort Worth that he was ready for trial in that case. The Fort Worth court's calendar was also busy, so the judge suggested that a jury be selected in Hernandez's case and then excused pending trial to begin a day or two later. Hernandez told the court that this "will be fine with me." Accordingly, on April 26, a jury was selected for the Fort Worth case, and all parties were notified that the trial would begin as soon as the case could be reached.

Later that day, Hernandez telephoned the Dallas court to say he was "in trial" in Fort Worth. Upon receiving his message, the Dallas judge telephoned the Fort Worth judge and informed him of Hernandez's earlier commitment in Dallas. The Fort Worth judge then agreed to continue the Fort Worth trial and excused the jury that had been selected so that the Dallas trial might proceed as scheduled. Hernandez complains that he was not privy to the conversation between the two judges, but it is apparent that their sole purpose was to eliminate the conflict that he had created. The next day, Wednesday, April 27, the Fort Worth court notified Hernandez that the jury in the Fort Worth case had been dismissed and the case taken from the trial docket.

On that same Wednesday Hernandez filed in the Dallas court proposed findings of fact and conclusions of law relating to the Dallas case without any indication that he was not prepared for trial. But when the Hornbuckle case was called for trial later that day, Hernandez announced that he would not commence even at the risk of dismissal of the case, because (1) he had been unable to recover the documents that had been given to Arco, (2) Arco's counsel had not delivered to him copies of its trial exhibits, and (3) he was unable to "shift gears" from his involvement in the Fort Worth case. The Dallas court did not think any of Hernandez's reasons sufficient to justify his refusal to start the trial. The court stated that it had communicated with the judge in Fort Worth, and that the Fort Worth case would be continued so that the previously scheduled Arco case might proceed.

Arco moved to dismiss Hornbuckle's case. The court entered an order finding that Hernandez's reasons for refusing to go to trial "are not valid and not made in good faith" and that Arco "was ready for trial, with witnesses present in the courtroom and other witnesses en route from distant parts of the United States." The court found not only that Hernandez's refusal to go to trial was disruptive to the court's docket and occasioned inconvenience to other litigants, but also that his conduct "throughout the course of his litigation has been unacceptably dilatory." His refusal to proceed was adequate grounds for dismissal of the suit. Instead, however, the court fined Hernandez $2,000,

to be paid from his personal funds; fined Hornbuckle $250 as a sanction for failure to respond to discovery interrogatories;[1] and ordered her to pay the reasonable expenses and attorney's fees incurred by Arco in preparing for trial. (The order required Arco to file an affidavit specifying such expenses and fees and afforded Hernandez a chance to reply.) A few days later, the court on its own motion reduced Hernandez's fine to $1000.

Arco's lawyers filed an affidavit stating that they had spent 344.2 hours preparing for trial and stating that the fees and expenses incurred in preparation amounted to $49,740.66. Arco asked for 15% of its total fees and expenses, $7,461.10, if the case were rescheduled for trial "within a few weeks" and 40%, $20,117.69, if the case were set for trial "more than several months" from the date of its affidavit. Hornbuckle countered with a motion to examine the time records of Arco's counsel. On May 19, the district court entered an order stating that ample grounds had existed to dismiss the case on April 27 for want of prosecution, but that it had elected to give Hornbuckle the opportunity to avoid dismissal by reimbursing Arco for fees and expenses incurred in preparation for the scheduled trial.

The court denied Hornbuckle's motion for discovery of opposing counsel's time files because this was directed to questioning the total amount of time spent in preparation. Instead, the court awarded fees only for the time that would be required to prepare again for trial, which it said it could not reach until the next January. In fixing this amount, it did not rely on the time records of Arco's counsel, but on its own experience in handling Title VII cases and its observation of the thoroughness of counsel's efforts. On this basis, the court found that the three Arco lawyers would be required to spend a total of 44 hours to prepare for trial when the case was again reached, fixing their fees at $5480 and ex-

penses at $221.43. The court found that the hourly rates (which were not, apparently, questioned) were reasonable and in accordance with currently charged rates for similar legal services in Dallas and that the out-of-pocket expenses were reasonable. Because it was assessing these fees and expenses against Hornbuckle, the court vacated the fine of $1000 against Hernandez. The order concluded by stating that, if the sum was not paid by noon May 27, the complaint would be dismissed with prejudice. On May 27, it entered such a dismissal.

Hornbuckle filed a motion to vacate the dismissal on the ground that she was financially unable to pay the sum fixed by the court and also challenging the basis on which the court had determined the amount of duplicative preparation that would be required for the new trial. Arco countered with an affidavit that Hornbuckle's gross earnings for 1982 and her projected salary for 1983, exclusive of fringe benefits, exceeded $35,000 in each year. Without any further statement of the reasons for its action, the court denied Hornbuckle's motion for relief from the judgment of dismissal.

## II.

While no judge who has, as a lawyer, personally tried law suits can fail to be sympathetic to the burdens that a heavy litigation practice places on counsel, this court insists that trial lawyers are obligated to undertake no more responsibility than they can responsibly handle and to be candid with courts about scheduling problems that nevertheless arise. Every trial court in this circuit has more cases than the most diligent judge can reach. If, after reasonable notice that a case has been scheduled for trial on a date counsel has announced he will be ready, he is unable to proceed with a trial, the other parties are put to needless expense, the court is inconvenienced, and, worst of all, valu-

---

1. Hornbuckle paid the $250 imposed as a discovery sanction, and she does not challenge that ruling.

able trial days are irretrievably wasted. For it is impossible to apply scheduled but unused trial time to other cases awaiting trial. Trial courts therefore have both the power and the duty to take measures to control their dockets and to ensure that counsel properly prepare cases scheduled for trial so that they can be tried and decided rather than continued and rescheduled.[2]

■ The unjustified failure of a litigant to proceed to trial on a regularly scheduled date may be punished by the imposition of reasonable sanctions. Fed.R. Civ.P. 41(b). Whether a sanction should be imposed and, if so, how severe it should be are matters for the trial court to decide, and it is accorded broad discretion with regard to both.[3] The ultimate sanction for the litigant is dismissal of his case with prejudice. This most extreme penalty should be imposed only after full consideration of the likely effectiveness of less-stringent measures.[4]

■ Hernandez demonstrated disregard for both orderly procedure and his responsibilities as a member of the bar. He failed to notify the Dallas court in advance that he intended, despite its schedule, to attempt to proceed with a trial in Fort Worth. He failed also to notify the Fort Worth judge of his trial problems. He apparently thought he had a right to keep both cases proceeding simultaneously without full disclosure to either judge, on the basis, as expressed in oral argument to us, "I'm gonna go to trial in the district court where I can go to trial." It is not an unfair inference that his choice of going to trial in Fort Worth rather than Dallas may have been his solution to the Dallas court's refusal to grant another continuance. The district court was, and still is, justified in imposing reasonable sanctions on him for his dereliction.

■ When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice.[5] The record does not disclose, however, that the trial judge considered any alternative sanction other than payment of $5701.43 by Hornbuckle, or that the judge determined that alternative to be one that Hornbuckle was capable of performing. When a district court dismisses an action with prejudice for counsel's failure to prosecute, such findings of fact are essential for our consideration of the inevitable argument that the dismissal was an abuse of its discretion.

■ Accordingly, without in any way faulting the district court, whose patience was indeed tried, we remand the case for express findings concerning whether Hornbuckle had the ability to pay the sum assessed as an alternative to dismissal, and, if not, whether any sanction less severe than dismissal, including those that might be assessed against counsel,[6] would be appropriate and sufficient.

2.  See *Link v. Wabash Railroad Co.*, 370 U.S. 626, 627–34, 82 S.Ct. 1386, 1387–90, 8 L.Ed.2d 734, 736–40 (1962); *Burden v. Yates*, 644 F.2d 503 (5th Cir.1981).

3.  *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1291 (5th Cir.1983), *modified on other grounds* 722 F.2d 209 (5th Cir.1984), *cert. denied,* — U.S. ——, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir.1978); *Lopez v. Aransas County Independent School District,* 570 F.2d 541, 544 (5th Cir.1978).

4.  *Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982); *Harrelson v. United States,* 613 F.2d 114 (5th Cir.1980); *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir.1976), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977).

5.  *See, e.g., National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287, 1291 (5th Cir.1983), *modified on other grounds,* 722 F.2d 209 (5th Cir. 1984), *cert. denied,* — U.S. ——, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984); *Stevens v. Greyhound Lines, Inc.,* 710 F.2d 1224, 1230–31 (7th Cir. 1983); *Hejl v. State of Texas,* 664 F.2d 1273 (5th Cir.), *cert. denied,* 456 U.S. 933, 102 S.Ct. 1987, 72 L.Ed.2d 452 (1982); *Ramsay v. Bailey,* 531 F.2d 706 (5th Cir.1976), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977).

6.  *See Rogers v. Kroger Co.,* 669 F.2d at 322; *Woodham v. American Cystoscope Co.,* 335 F.2d 551, 557 (5th Cir.1964). Federal courts have inherent power to assess expenses against counsel who willfully abuse judicial process. *Road-*

The other issues raised on appeal are without merit. The district court might properly base an award of sanctions on its own factual determination. There was no necessity for analysis of the fees assessed according to the criteria in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), for the reasonable hourly rate was not challenged and the only other factor in computing the sanction was the number of hours that would be required by counsel to prepare again for trial nine months after the originally scheduled date. Inspection of the time files of Arco's counsel would not disclose evidence relevant to the appropriate award, for the issue before the court was not how much time had been spent but how much time would be required in the future. The determination that the documents in Hornbuckle's possession were Arco's property was supported by the record.

The judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.