Johnnie McNEAL, Plaintiff–Appellant,

v.

B.H. PAPASAN, Superintendent of Education, Tunica County Schools, Et Al., Defendant–Appellee.

No. 87–4872

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 19, 1988.

Robert L.J. Spence, Jr., Memphis, Tenn., for plaintiff-appellant.

J.W. Dulaney, Jr., Tunica, Miss., for defendant-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

KING, Circuit Judge:

Plaintiff appeals the district court's decision to dismiss, with prejudice, plaintiff's employment discrimination suit against her former employer. Our review of the record indicates to us that the district court may have imposed the sanction of dismissal solely because of the inconvenience plaintiff caused when she was not ready to proceed to trial on her trial date. While we sympathize with the district court's frustration over the plaintiff's lack of preparedness, we cannot say that this reason, when tested by our stringent standards for dismissal, would support the court's choice of sanction. Therefore, we vacate the district court's judgment and remand the case to that court for further consideration.

I.

In 1984, Johnnie McNeal ("McNeal") was fired from her job as a teacher in the Tunica County School System ("the School"). Believing that she was discharged because of unlawful discrimination, McNeal filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC issued McNeal a right to sue letter in November 1985, McNeal—acting through Richard Burdine ("Burdine"), the attorney who represented her before the EEOC—brought a civil rights action against the School, its superintendent of education, and several school board members. In addition, McNeal sued the principal of the elementary school to which she had been assigned prior to her discharge. McNeal's complaint was filed on February 21, 1986. On May 13, 1986, the School filed an answer in which it asserted several affirmative defenses and denied that it had acted discriminatorily in discharging McNeal. Two days later, the individually named defendants filed a motion asking the court to dismiss them from the lawsuit. On July 22, McNeal also filed a motion to dismiss the individually named defendants she had

788

joined in her suit. One week later, the district court entered its order granting McNeal's motion and denying, as moot because of its action on McNeal's motion, the individual defendants' motion; after the court's order, therefore, only the School remained as a defendant.

As far as the record discloses, the next action in this case was taken by the district court. On October 30, the court entered an "Order on Discovery," which recited that under the Federal Rules of Civil Procedure, the district court was required to enter a scheduling order in each of its cases "not later than 120 days after the filing of the complaint." Therefore, the court directed the parties to file with the federal magistrate assigned to McNeal's case, and within fourteen days from the date of the Order on Discovery, a proposed scheduling order. A scheduling order signed by the magistrate and counsel for the parties was finally entered on December 2, 1986. The completed order set forth discovery and motion deadlines, and scheduled a pretrial conference for 10:00 a.m. on July 16, 1987.

The pretrial conference took place as scheduled, with counsel for both plaintiff and defendant present. Out of the conference grew the "Pretrial Order" which was to have controlled the trial of McNeal's suit. In the Pretrial Order, the parties stipulated to nineteen different facts and listed as disputed three additional issues of fact and seven issues of law. The parties also provided the court with a list of all witnesses to be called upon trial of the case, a copy of all exhibits to be entered into evidence, and the approximate length of time needed to present their respective cases. A notation on the Pretrial Order indicated that, at the time of the pretrial conference, counsel for both parties believed it was likely that the case would settle before trial. On July 20, 1987, the court set October 22, 1987 as the trial date; notices announcing this date were mailed to the School's counsel and to Burdine.

According to the record, nothing transpired from the date trial was set until October 8, 1987. Although trial was only a little more than two weeks away by that time, on October 8, McNeal asked Burdine to withdraw as her counsel. In a letter, McNeal told Burdine that while she appreciated the initial diligence and vigor with which he had represented her, "personal circumstances" forced her to request the return of both her file and the advance she had paid him. The record is silent as to when Burdine received McNeal's letter (and, for that matter, as to whether Burdine and McNeal discussed her decision before the trial date and, if so, what arrangements they made concerning McNeal's case), but on Monday, October 19—three days before McNeal's trial date—Burdine called the district court and asked that he be allowed to withdraw from his representation of McNeal. During this conversation, Burdine also requested a continuance on McNeal's behalf; the district judge who was scheduled to hear the trial, however, told Burdine that his withdrawal did not constitute grounds for a continuance. Apparently no one—not Burdine, McNeal, or the court—informed counsel for the School about either McNeal's decision to fire Burdine or her request for a continuance.

On Thursday, McNeal's trial was called as scheduled. Burdine and McNeal were both present, and the School brought eight witnesses to testify. As a preliminary matter, Burdine formally presented his motion to withdraw, which the district court granted. In the next instant, the court called McNeal's case for trial. Since she was no longer represented by counsel, however, McNeal informed the court that she was not prepared to proceed at that time; instead of presenting her case, therefore, McNeal formally requested a continuance so that she could secure new counsel. In response to this request, the court said:

Your last minute dissatisfaction with an attorney, after the Court has subpoenaed all of these witnesses, I see people here, presumably, from Tunica, the school board, what have you. The Court itself came 170 miles from Aberdeen over here to try this case and other cases, too, but this was one of the reasons that we came over here. I've reviewed the file.
....

I'm saying all of this so you'll have an understanding if you want to dismiss your case you may do so. If you don't elect to do so, I strongly believe that I'm going to because I can't see any justifiable reason for this last minute move that has put all of these people to considerable, I am sure, expense and the time consuming matter, taking them from their jobs. I believe they had to drive a hundred miles to get down here today.

McNeal protested the court's position by explaining why she had found it necessary to discharge her attorney at such a late date. According to McNeal, she became dissatisfied with Burdine after he failed to keep her informed about the progress of her lawsuit. Specifically, McNeal complained that Burdine failed to tell her that a pretrial conference had been held in her case, that over a month after she finally learned through a third party about the conference he informed her that he had yet to talk with her witnesses, and that he failed to transmit information to her about a settlement offer from the School. Despite McNeal's explanation, however, the court maintained that because of the expense to which the School and the court had gone to afford McNeal her day in court, and because McNeal knew at least a month before the scheduled date that her case had been set for trial, it would be "an absurdity to continue this matter to allow [her] to retain counsel." Consequently, the court apologized to the School's witnesses who had presented themselves for trial and, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, dismissed McNeal's case with prejudice, taxing all costs against her. McNeal, who has secured new counsel in the space of time since the dismissal of her suit, now appeals the district court's judgment.

## II.

We are always sympathetic to the scheduling problems which district courts face, and no more so than when, as here, the district court's schedule requires it to conduct trials in cities far from its home base. Especially in those cases, the consequences of a party's failure to prepare for trial are more than they might seem at first thought:

> If, after reasonable notice that a case has been scheduled for trial on a date counsel has announced he will be ready, he is unable to proceed with a trial, the other parties are put to needless expenses, the court is inconvenienced, and, worst of all, valuable trial days are irretrievably wasted. For it is impossible to apply scheduled but unused trial time to other cases awaiting trial.

*Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1236–37 (5th Cir.1984). Because the consequences of missed trial dates can be debilitating to an organized system of case resolution, we place upon district courts the responsibility for taking measures "to ensure that counsel properly prepare cases scheduled for trial so that they can be tried and decided rather than continued and rescheduled." *Id.* at 1237. And in conjunction with the exercise of that responsibility, there can be no question that "[t]he unjustified failure of a litigant to proceed to trial on a regularly scheduled date may be punished by the imposition of reasonable sanctions." *Id.* The question which this case presents, therefore, is not whether the district court had the power to sanction McNeal for her failure to proceed to trial; instead, the question is whether the sanction chosen by the district court—dismissal with prejudice—was reasonable under the circumstances of this case. We turn, therefore, to the standards which, within this circuit, determine the appropriateness of the court's decision to dismiss McNeal's suit.

Rule 41(b) of the Federal Rules of Civil Procedure specifically gives a district court the power to sanction a plaintiff's failure to prosecute by dismissing the plaintiff's case with prejudice; the Supreme Court, moreover, has concluded that the district court's power does not depend on the existence of a motion urging the sanction, *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962). Instead, a district court can—under Rule 41(b)—decide *sua sponte* that dismissal is appropriate, and its decision must be up-

held by us on appeal unless we can say that by choosing this sanction, the court abused its discretion. *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir.1985).

We have repeatedly recognized, however, that a dismissal with prejudice for failure to prosecute is an extreme sanction which is to be used only when the "plaintiff's conduct has threatened the integrity of the judicial process [in a way which] leav[es] the court no choice but to deny that plaintiff its benefits." *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir.1982). Therefore, under our abuse of discretion review, we have consistently refused to permit a court to impose this sanction unless the history of a particular case discloses both (1) a clear record of delay or contumacious conduct by the plaintiff, and (2) that a lesser sanction would not better serve the best interests of justice. *Sturgeon*, 778 F.2d at 1159; *Rogers*, 669 F.2d at 321 (collecting cases); *see also Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir.1986) (applying Rule 41(b) standards to a Rule 16(f) dismissal with prejudice). Moreover, because of our reluctance to visit such a harsh sanction upon a party solely because of the sins of his counsel, in close cases we have often looked for proof of one of the following "aggravating factors"—(1) the plaintiff's personal contribution to the delay, (2) the defendant's actual prejudice because of the delay, and (3) delay that can be characterized as intentional. *Sturgeon*, 778 F.2d at 1159; *Rogers*, 669 F.2d at 320.

We have tested the facts of this case by our standards and, for several reasons, are unable to affirm—at this time, on this record—the district court's decision to dismiss McNeal's case with prejudice. To begin with, apart from McNeal's request for a continuance to secure new counsel, we can find no "clear evidence of delay" such as our prior cases have found sufficient to warrant the use of this extreme sanction. *See Salinas v. Sun Oil Co.*, 819 F.2d 105, 106–07 (5th Cir.1987); *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1519–21 (5th Cir.1985). While the record does suggest that this case has not been brought to trial as quickly as perhaps

was possible, it does not support the conclusion that either McNeal or Burdine was primarily responsible for those delays which did occur. For example, the first delay in this case began when the School filed an uncontested motion to extend the period of time in which to answer McNeal's complaint. Although by not contesting the motion McNeal became responsible, in part, for the month and a half delay caused by giving the School more time to answer, it is obvious that the School—and not McNeal— was the primary beneficiary of that delay. Similarly, McNeal's case was slowed by the untimely entry of an agreed scheduling order. However, it appears that the district court was itself primarily responsible for the order's late entry—although both the federal and local rules gave the court 120 days after the filing of the complaint to enter a discovery order, the court did not ask the parties to submit a proposed order until October 30, 1986, which was over four months after the 120 day deadline expired. In the past, we have refused to base a finding of "clear evidence of delay" on incidents for which both parties were responsible, *see Rogers*, 669 F.2d at 321; consequently, we may not do so here today.

McNeal is, however, solely responsible for the fact that her case was not tried on October 22, 1987, its scheduled date. The question, then, is whether her failure to be prepared on October 22 is enough, by itself, to establish either a clear record of delay or conduct contumacious enough to justify the court's decision to impose the harsh sanction of dismissal against her. With respect to the question of delay, our prior cases constrain us from using McNeal's lack of preparation on her trial date as the sole proof to support the district court's sanction. *See, e.g., id.* at 319, 321 (absent evidence that the plaintiff sought to delay his case by requesting a substitution of counsel on the first day of trial, the fact that plaintiff's new counsel was unprepared and therefore unable to proceed on the scheduled trial date was not, even in the face of six previous requests for continuances, clear evidence of delay for the purpose of dismissing plaintiff's case with prejudice).

We say this for two reasons. First, there is no evidence on the record before us that the district court believed that McNeal fired her counsel as a delaying tactic. Second, our cases recognize that delay which warrants dismissal with prejudice must be longer than just a few months; instead, the delay must be characterized by " 'significant periods of total inactivity.' " *John v. Louisiana,* 828 F.2d 1129, 1131 (5th Cir. 1987) (quoting *Morris v. Ocean Sys.,* 730 F.2d 248, 252 (5th Cir.1984)). In this case, the district court did not ask McNeal how long she needed to prepare for trial. Since a valid pretrial order, complete with stipulations and the names of potential witnesses, had already been entered in this case by the time the court dismissed McNeal's suit, and since McNeal's ability to secure new counsel to represent her in time for this appeal demonstrates that obtaining counsel was not itself a difficult feat, we cannot assume from the record before us that McNeal would have remained unprepared for "significant periods."

Even without a clear record of delay, of course, a record of contumacious conduct by McNeal or Burdine would satisfy the first of our two prerequisites for dismissal of a suit with prejudice under Rule 41(b). The cases in this circuit, however, have focused primarily on delay, and those in which we have highlighted conduct which could be called contumacious seldom give the conduct that label. Still, we have found several cases which are relevant to the question before us. In *Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233 (5th Cir.1984), Hornbuckle's employment discrimination suit against her former employer was dismissed with prejudice after her attorney failed to proceed on the day trial was scheduled and after Hornbuckle failed to pay a fine assessed by the district court because of the attorney's failure to proceed. The facts which underlay the attorney's decision not to proceed in *Hornbuckle,* however, were extreme. After two continuances at Hornbuckle's request, and one denial of a similar request, Hornbuckle's trial was scheduled for April 27 in Dallas —a date which Hornbuckle's attorney did not protest. On April 26, however, the

attorney announced ready for trial in a separate case being conducted in Fort Worth; on that same day he selected a jury in that case and agreed to the court's suggestion that the trial itself begin a day or two later. It was only then that the attorney informed the Dallas court that he was in trial. Upon hearing the news, the Dallas court contacted the Fort Worth court and informed it of the attorney's schedule conflict. The Fort Worth court agreed to excuse the jury that had already been selected and to continue the trial. On the 27th, Hornbuckle's attorney was told of this action and, because Hornbuckle's case was due to be called for trial on that day, the attorney filed in the Dallas court proposed findings of fact and conclusions of law. However, later that same day the attorney refused to begin Hornbuckle's trial. His reasons: he had yet to recover documents or exhibits he needed from the defendant, and was unable to "shift gears" from the other case on such short notice. The Dallas court specifically found that the attorney's reasons for refusing to go to trial were neither valid nor made in good faith. On appeal, we found the attorney's conduct sufficient to support a dismissal with prejudice:

> [The lawyer] demonstrated disregard for both orderly procedure and his responsibilities as a member of the bar. He failed to notify the Dallas court in advance that he intended, despite its schedule, to attempt to proceed with a trial in Fort Worth. He failed also to notify the Fort Worth judge of his trial problems. He apparently thought he had a right to keep both cases proceeding simultaneously without full disclosure to either judge.... It is not an unfair inference that his choice of going to trial in Fort Worth rather than Dallas may have been his solution to the Dallas court's refusal to grant another continuance.

*Hornbuckle,* 732 F.2d at 1237. After *Hornbuckle* was decided, we upheld a dismissal entered when an attorney refused to proceed to trial on schedule because his expert witness was hospitalized and, therefore, unable to testify. *See Sturgeon v.*

*Airborne Freight Corp.* 778 F.2d 1154 (5th Cir.1985). As was the case in *Hornbuckle,* however, unusual facts supported the dismissal.

Sturgeon's wrongful discharge action against his employer was scheduled for a February 4, 1985 trial date, with discovery to be completed by January 4. During that period, Sturgeon's counsel failed to name any expert witnesses. About a month before trial was to begin, the court reset Sturgeon's case for May 6 and designated a new discovery cut-off date of March 31. Again, Sturgeon's counsel failed to name an expert within the allotted time. One week before trial, however, Sturgeon's counsel filed with the court a witness list in which he named Bunch as an expert. The defendant objected to this late designation on grounds of "prejudicial surprise," and filed a motion in limine to exclude Bunch's testimony. After a jury was selected to hear the case—a process in which counsel for both sides participated—Sturgeon's attorney for the first time informed the court that he wanted the trial continued. As grounds for this continuance, the attorney informed the court of something he had known since before the jury was selected— Bunch was hospitalized and could not testify on Sturgeon's behalf. The district court, after hearing argument on the motion from both sides, ruled that Bunch's testimony would not be admitted because Bunch was not timely designated as an expert by Sturgeon. At that point, Sturgeon's attorney protested that Bunch's testimony was so essential that without it he could not present Sturgeon's case; therefore, he refused to proceed to trial. After considering other options, the district court dismissed Sturgeon's case with prejudice and, on appeal, we upheld the district court's action. We agreed with the district court that the attorney gave no valid reason—since Bunch's testimony was so essential—for designating Bunch so late, that the attorney should have known that Bunch's testimony could be justifiably excluded, and therefore that the attorney should have been prepared to try the case without that testimony. *Sturgeon,* 778 F.2d at 1159. In conclusion, we found no legitimate reason on those facts for the attorney's failure to be prepared for trial. *Id.*

As these cases demonstrate, we are willing, under proper circumstances, to find contumacious conduct in a party's refusal to proceed to trial on the date which the court has scheduled. The cases cannot, however, be read to say that we will always find a party's unpreparedness to be contumacious. Instead, we must review the specific facts which, in each case, led to the party's failure to try his lawsuit on schedule and determine whether the facts expose an obstinate disrespect for the judicial process. For as we recently recognized, it is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is "the stubborn resistance to authority" which justifies a dismissal with prejudice. *John,* 828 F.2d at 1131–32 (1987). In both *Hornbuckle* and *Sturgeon,* the district court aided our process by inquiring into the validity of counsels' excuses. In each case, the district court analyzed the reasons given for not proceeding to trial, exposed the flaws in the reasons, and concluded that they did not justify the inconvenience and expense which naturally flow from the disruption of a court's trial schedule. In the case before us, however, we have not been so aided.

What we know is that (1) McNeal asked her attorney to withdraw several weeks before trial; (2) Burdine informed the court three days before trial of his intent to do so and asked for a continuance at that time; (3) McNeal explained to the court her reasons for firing Burdine; and (4) the district court dismissed McNeal's case because he was angered at the inconvenience and expense she caused by not being prepared on October 22. What we do not know includes (1) whether the district court thought McNeal's dissatisfaction with Burdine was sincere or merely a ploy; (2) whether McNeal actively searched for an attorney to represent her between the time she fired Burdine and the trial date; and (3) why no one informed the School that McNeal

would not be prepared for trial on October 22. After careful consideration, we conclude that what we know is not sufficient information upon which a finding of contumacious conduct can rest; because of what we do not know, however, we hesitate against holding finally that McNeal's actions were not contumacious. Consequently, we think it necessary for the district court to inquire further into the circumstances surrounding McNeal's decision to fire Burdine or, at the least, to give us more information of what the court perceived those circumstances to be at the time it entered dismissal. We, therefore, must vacate the district court's judgment of dismissal and remand this case.

Our decision to remand is motivated by more than just our concern over whether McNeal's conduct was contumacious. Even if the record before us had been replete with evidence which satisfied the standard for delay or contumacious conduct, we could not affirm the district court's decision. As we explained above, we do not doubt that the district court was justified in sanctioning McNeal for her failure to proceed to trial, regardless of whether her conduct can be termed contumacious. But even with a clear record of delay or contumacious conduct, a district court cannot impose the sanction of dismissal without prejudice for failure to prosecute unless the court first finds that a lesser sanction would not have served the interests of justice. And, as our cases explain, we cannot conclude from a silent record that the district court made this required finding:

> [W]e have said that we cannot affirm a dismissal unless the district court expressly considered alternative sanctions and determined that they would not be sufficient to prompt diligent prosecution

or the record reveals that the district court employed lesser sanctions prior to dismissal (assuming that plaintiff was capable of performing them) that in fact proved to be futile.

*Callip,* 757 F.2d at 1521; *see also Hornbuckle,* 732 F.2d at 1237 (remanding case to district court for express findings on the appropriateness and sufficiency of lesser sanctions). The record in this case shows that the district court did not impose lesser sanctions before it dismissed McNeal's case with prejudice. Moreover, the record is silent on the question of whether the district court even considered—before ordering the harshest sanction available to it—the possibility that alternative, less drastic, sanctions could serve the interests of justice.[1] In *Rogers,* we suggested that

> [a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket.

669 F.2d at 321-22. Considering that in dismissing McNeal's case, the district court was primarily concerned about the money and time the School needlessly expended in transporting witnesses from their homes to the city in which trial was scheduled, we cannot say that none of these lesser sanctions would serve the ends of justice as well or better than a dismissal with prejudice. In fact, in a case which presented a similar problem recently, we suggested that charging the offending party with the costs and attorney's fees accumulated because of his actions is a more appropriate, and less harsh, sanction than dismissal.

---

1. As the excerpt we quote from the district court shows, before dismissing McNeal's suit with prejudice the court did give McNeal the option of voluntarily dismissing her case herself. Arguably, such a dismissal would have been without prejudice to McNeal's right to refile. It could also be argued, therefore, that the court did consider on the record at least one lesser sanction before it imposed its own punishment. Such an argument, however, fails to recognize that McNeal's suit arose under Title VII, and that even if her suit had been dismissed without prejudice, the statute of limitations has run on her claim and would prevent her from refiling. Because we recognize that when the statute of limitations on a claim has expired, a dismissal of that claim without prejudice is, in reality, a sanction no less harsh than a dismissal with prejudice, we do not treat a dismissal without prejudice under those circumstances as a lesser sanction. *See, e.g., Sturgeon,* 778 F.2d at 1160; *Rogers,* 669 F.2d at 323 n. 9.

*See John*, 828 F.2d at 1132. We leave, however, to the discretion of the district court the decision on the precise sanction which should be applied. We note only, as a final thought, that our opinion does not foreclose the possibility that the district court might reimpose the dismissal we today vacate. Should the court find on remand that McNeal's conduct was contumacious and that dismissal with prejudice is the least sanction which would serve the ends of justice, dismissal would be appropriate; however, as we emphasize by this opinion, the court would then be entering the sanction only after it has examined all the circumstances surrounding McNeal's failure to proceed, tested those circumstances by the correct standard, and supplemented the record in a way which lets us understand that it has complied with those standards. Because of the harshness of the sanction with which we deal, our cases require no less.

### III.

For the foregoing reasons, we VACATE the district court's judgment dismissing McNeal's case with prejudice and REMAND the case for proceedings consistent with this opinion.