# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2023

Lyle W. Cayce
Clerk

No. 19-50562

RUSSELL HOPE, JR.,

*Plaintiff—Appellant*,

*versus*

ANTHONY J. PATRICK; WILLIAM A. BURROUGHS; DANIEL PARKER; IBU ZAFFA; FRANCISCO GONZALEZ; MARCUS DORMAN,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
No. 6:17-CV-317

Before RICHMAN, *Chief Judge*, and DENNIS and HAYNES, *Circuit Judges*.

PER CURIAM:*

Russell Hope, Jr. appeals the district court's Rule 41(b) dismissal of his § 1983 action. Because the district court abused its discretion by concluding that lesser sanctions would not prompt diligent prosecution, we

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

vacate the order of dismissal and remand for the imposition of a lesser sanction and further proceedings consistent with this opinion.

# I

Hope, an inmate in the custody of the Texas Department of Criminal Justice (TDCJ), filed a pro se § 1983 action against several TDCJ officials after he was allegedly assaulted during transport between correctional facilities. The district court appointed counsel to represent Hope, and Hope diligently pursued his claims, submitting numerous discovery requests and deposing nine witnesses. The court ultimately set trial for 9:00 a.m. on February 4, 2019. Shortly before trial, TDCJ transferred Hope to the Hughes Unit, a correctional facility thirty-eight miles from Waco, where the trial was to take place. Coincidentally, the Hughes Unit is the facility where the alleged assault underlying Hope's suit occurred. Hope asserts that, in the days before trial, Hughes Unit officers taunted him and withheld his meals in retaliation for the lawsuit.

On the morning of trial, TDCJ officers prepared to strip search Hope before transporting him to court. When the guards placed hand restraints on Hope, he pulled the restraints and key into his cell, covered his cell door with a mattress, damaged the key by scraping it on the floor, and flushed the key down the toilet. After removing the mattress and relinquishing the hand restraints, Hope repeatedly told the guards that he had flushed the key and did not have it in his possession. Hope repeatedly explained that he took the key because an officer had withheld his meals the previous day. After approximately thirty minutes, guards removed Hope from his cell without the need for force. As officers escorted Hope to the strip search cage, Hope lay on the ground for about thirty seconds before complying with orders to stand up and submitting to a strip search.

No. 19-50562

After the search, Hope received bench warrant clothes but refused to wear them, tearing the provided shirt. Officers brought a different shirt, explaining that the garment was merely for transport and that Hope's attorneys would provide him with court-appropriate clothing. Hope agreed to wear the shirt. Officers ordered Hope to approach the body office security scanning (BOSS) device, which detects metal in human bodies. Hope initially refused to undergo a BOSS scan but relented after approximately fifteen minutes. The scan revealed no metal, and officers escorted Hope to the transport van without further incident. TDCJ personnel did not file a report regarding problems with Hope's transport.

Hope arrived at the district court before his trial began, during jury selection for another matter. However, the United States Marshals did not permit Hope to enter the courthouse after TDCJ officers reported that Hope had likely swallowed the key to his hand restraints and needed to be taken to the hospital for an x-ray. Accordingly, the district court postponed Hope's trial. The TDCJ officials then filed a Rule 41 motion to dismiss, which the court granted, concluding that Hope engaged in contumacious conduct warranting dismissal of his claims with prejudice. The district court denied Hope's motion to alter or amend the judgment, and Hope timely appealed.

## II

On appeal, Hope contends that the district court erred in dismissing his § 1983 suit for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).[1] This court typically reviews Rule 41(b) dismissals for abuse of discretion.[2] Dismissal with prejudice is, however, "an extreme sanction," reserved for cases in which "the plaintiff's conduct has

---

[1] *See* FED. R. CIV. P. 41(b).

[2] *See Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992).

threatened the integrity of the judicial process" such that "the court [has] no choice but to deny that plaintiff its benefits."[3]  We affirm dismissals with prejudice only when (1) "the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile" and (2) "there is a clear record of delay or contumacious conduct by the plaintiff."[4]  In most cases affirming dismissals with prejudice, moreover, we have discerned "at least one of three aggravating factors: (1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct."[5]

## A

Before sanctioning a party via dismissal with prejudice, the district court must "expressly determine[] that lesser sanctions would not prompt diligent prosecution, or the record [must show] that the district court employed lesser sanctions that proved to be futile."[6]  In other words, the district court should "find . . . that dismissal with prejudice is the least sanction which would serve the ends of justice."[7]  Hope contends that the district court abused its discretion by failing to consider adequately lesser sanctions, such as issuing a warning or permitting Hope to testify by video,

---

[3] *McNeal v. Papasan*, 842 F.2d 787, 790 (5th Cir. 1988) (internal quotation marks omitted) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)).

[4] *Berry*, 975 F.2d at 1191.

[5] *Id.* (internal quotation marks omitted) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986) (per curiam)).

[6] *Id.*

[7] *McNeal*, 842 F.2d at 794.

because this was Hope's first instance of delay, and Hope had represented that he would not contribute to further delays.

In its order of dismissal, the district court concluded that lesser sanctions would not prompt diligent prosecution. The court noted that assessing fines and costs would not be appropriate because Hope's attorneys represent him on a pro bono basis. The court also "considered issuing a warning" but ultimately found this potential sanction ineffectual. The court reasoned that Hope's conduct, was "not the type of behavior that one would expect from a plaintiff who truly wished to diligently prosecute his case," because "[t]he [c]ourt gave Hope what he wanted—a day in court to have his claims heard—yet he chose to willfully disobey orders and resist authority despite knowing that his actions might have negative consequences on his case."

The district court's determination that lesser sanctions would not suffice is not plausible in light of the entire record.[8] First, as Hope emphasizes, this was his first instance of noncompliance. It is undisputed that both before and after appointment of counsel, Hope vigorously pursued his claims by conducting substantial discovery, meeting deadlines, and attending conferences. Thus, we agree with Hope that "the district court erred by declining to recognize the significant commitment Hope had displayed in prosecuting his case prior to the morning of trial." Second, video taken on the morning of trial, which the district court reviewed prior to dismissal, depicts Hope's clear intention to appear before the court and

---

[8] *See United States v. Wilcox*, 631 F.3d 740, 747 (5th Cir. 2011) ("A district court abuses its discretion when it makes an error of law or 'if it bases its decision on a clearly erroneous assessment of the evidence.'" (quoting *United States v. Lipscomb*, 299 F.3d 303, 338-39 (5th Cir. 2002))); *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985) (explaining "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it").

No. 19-50562

further belies the conclusion that Hope did not wish to pursue his case. Finally, the district court does not appear to have considered Hope's explanation for his behavior on the morning of trial. In an affidavit, Hope explained that his defiant conduct was a response to Hughes Unit guards withholding his food in retaliation for the lawsuit. These allegations do not excuse Hope's behavior. But they nonetheless indicate that, by misbehaving during transport, Hope meant to antagonize TDCJ officers, not avoid his trial. Given the unique circumstances surrounding Hope's nonappearance at trial, as well as Hope's repeated assurances that he will not contribute to further delay, the record does not support the district court's determination that lesser sanctions would not spur diligent prosecution. Thus, although the district court expressly found lesser sanctions inadequate, the court based this conclusion o a clearly erroneous view of the evidence and thereby abused its discretion.[9]

## B

We turn next to the other prong of our Rule 41(b) analysis, which requires (1) "a clear record of delay" or (2) "contumacious conduct by a plaintiff" to support a dismissal with prejudice.[10]

### 1

The district court perceived no clear record of delay warranting dismissal. Nor do we. Our caselaw recognizes that the requisite "delay . . . must be longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity."[11] Delay justifying

---

[9] *See Wilcox*, 631 F.3d at 747.

[10] *Berry*, 975 F.2d at 1191.

[11] *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326-27 (5th Cir. 2008) (internal quotation marks omitted) (quoting *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir. 1988)).

dismissal with prejudice is thus usually "egregious and sometimes outrageous."[12]

Here, no such delay occurred. Throughout the litigation, Hope met all deadlines and appeared at status and pretrial conferences. Regarding the day of trial, Hope admits that his behavior did slow the transport process that morning. But, as the TDCJ officials concede, Hope's outbursts added a mere forty-five minutes or so to his transport. That minimal lag is nowhere near the lengthy delays we have required to uphold other dismissals and is not a "significant period[] of total inactivity."[13] Moreover, the postponement of Hope's trial does not give rise to a clear record of delay justifying dismissal. The parties dispute whether Hope is to blame for the postponement. But any resulting delay, irrespective of its cause, was too brief to merit dismissal with prejudice.[14] Because trial could have proceeded once security concerns over the missing handcuff key were allayed, "we cannot assume from the record before us that [Hope] would have remained unprepared for significant periods."[15]

## 2

Instead of delay, the district court based its dismissal on contumacious conduct. We define contumacious conduct as "stubborn resistance to authority."[16] When assessing a litigant's contumaciousness, this court has

---

[12] *Id.* at 327 (internal quotation marks omitted) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)).

[13] *Millan*, 546 F.3d at 327; *see also McNeal*, 842 F.2d at 791 ("[D]elay which warrants dismissal with prejudice must be longer than just a few months . . . .").

[14] *See McNeal v. Papasan*, 842 F.2d 787 at 791 (5th Cir. 1988).

[15] *Id.* (internal quotation marks omitted).

[16] *Id.* at 792 (quoting *John v. La.*, 828 F.2d 1129, 1132 (5th Cir. 1987)); ROA.1439.

also considered "whether the facts expose an obstinate disrespect for the judicial process."[17]

Hope's case is dissimilar to our contumacious conduct precedent in which litigants repeatedly refused to comply with court orders or appear at scheduled proceedings.[18] It is undisputed that throughout the litigation, Hope vigorously pursued his claims, conducting substantial discovery, meeting all deadlines, and appearing at status and pretrial conferences. Without a pattern of prior misconduct, Hope's insubordination on the morning of trial is the only transgression potentially meriting dismissal.

The district court found that Hope engaged in contumacious conduct that morning when he "willfully refused to have hand restraints placed on his person," "pull[ed] said restraints into his cell," "destroy[ed] the key by flushing it down the toilet," and was generally "uncooperative and disruptive throughout the entire transport process by repeatedly refusing to comply with orders." That behavior clearly demonstrates "stubborn resistance to authority."[19] The question, then, is whether "the facts expose an obstinate disrespect for the judicial process."[20] We hesitate to conclude that Hope's

---

[17] *Id.*; *see also Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982) (noting that our decisions affirming Rule 41(b) dismissals with prejudice involve "cases where the plaintiff's conduct has threatened the integrity of the judicial process . . . leaving the court no choice but to deny that plaintiff its benefits").

[18] *See, e.g., Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 443 (5th Cir. 2016) (contumacious conduct occurred when the plaintiff engaged in a pattern of "applying for IFP status and then paying the filing fee rather than complying with an order to provide verifiable information in support of the IFP application"); *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1236-37 (5th Cir. 1984) (contumacious conduct occurred when an attorney moved to continue trial on multiple occasions, then scheduled two overlapping trials).

[19] *McNeal*, 842 F.2d at 792 (quoting *John*, 828 F.2d at 1132).

[20] *Id.*

intransigence, which occurred entirely within the prison and targeted solely TDCJ officers, meets this standard. Unlike other Rule 41(b) plaintiffs, Hope expressed no such resistance toward the court.[21] The record supports a conclusion that Hope fully intended to appear at trial, and did in fact arrive at the courthouse, but was prevented from entering after TDCJ officers incorrectly informed court personnel that Hope had swallowed the handcuff key.

Ultimately, however, we need not decide whether Hope obstinately disrespected the judicial process. Even if Hope's conduct was contumacious, the district court nonetheless failed to consider lesser sanctions adequately before dismissing Hope's claims with prejudice.

### III

We express no opinion as to whether Hope's case presents "aggravating factors" such as intentional delay caused by a party (not his attorney) or actual prejudice to the opposing party.[22] The district court's erroneous conclusion regarding the futility of lesser sanctions requires us to vacate the order of dismissal regardless of any exacerbating circumstances.[23]

---

[21] *See, e.g., Sampson v. Giles*, 410 F. App'x 823, 824-25 (5th Cir. 2011) (per curiam) (unpublished) (concluding that an incarcerated § 1983 plaintiff engaged in contumacious conduct when he "state[d] multiple times that he was not going to court" and "could not be transported to court because he refused to accept prison issued toiletries and to submit to a strip search").

[22] *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992).

[23] *See id.* (explaining that "[w]e will affirm dismissals with prejudice for failure to prosecute only when . . . the district court has expressly determined that lesser sanctions would not prompt diligent prosecution").

No. 19-50562

## IV

Nor do we address Hope's contentions regarding the effect of dismissal on his due process rights.[24] Our conclusion that dismissal was an inappropriate sanction here renders moot any due process implications resulting from that dismissal.

\*          \*          \*

For the foregoing reasons, we VACATE the order of dismissal and REMAND for the imposition of a lesser sanction and further proceedings consistent with this opinion.

---

[24] *See Link v. Wabash R. Co.*, 370 U.S. 626, 632, 633 (1962) (explaining that, in the context of Rule 41(b) dismissals, "[t]he adequacy of notice and hearing . . . turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct," but also noting that "the availability of a corrective remedy such as is provided by Federal Rule of Civil Procedure 60(b)—which authorizes the reopening of cases in which final orders have been inadvisedly entered—renders the lack of prior notice of less consequence.").