896 F.2d 645
 16 Fed.R.Serv.3d 104, RICO Bus.Disp.Guide 7426
 Rafael FIGUEROA RUIZ, et al., Plaintiffs, Appellants,
v.
Jose E. ALEGRIA, et al., Defendants, Appellees.
 No. 89-1563.
 United States Court of Appeals,
First Circuit.
 Submitted Nov. 9, 1989.
Decided Feb. 23, 1990.
 
 Edelmiro Salas Garcia, Santurce, P.R., on brief for plaintiffs, appellants.
 Roberto Boneta and Enrique Peral, Hato Rey, P.R., on brief for defendant, appellee, Chase Manhattan Bank, N.A.
 Arturo J. Garcia-Sola, and McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria, Hato Rey, P.R., on brief for defendant, appellee, City Federal Sav. Bank.
 Benjamin Rodriguez Ramon and Rodriguez Ramon, Pena & Diaz, Hato Rey, P.R., on brief for defendant, appellee, Banco Nacional, N.A.
 Ralph J. Rexach and Rexach & Pico, Santurce, P.R., on brief for defendant, appellee, Rafael Perez-Bachs.
 Before BOWNES, ALDRICH and SELYA, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 The four stockholders of Plaza de Diego Shopping Center, Inc. ("Plaza") brought this action against various financial institutions and others following the collapse of an arrangement to finance the shopping center's expansion. Alleging that the defendants' fraudulent conduct resulted in the demise of the construction project and Plaza's ultimate bankruptcy, they sought treble damages under both the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1964(c), and the Bank Holding Company Act, 12 U.S.C. Sec. 1975, as well as further damages under a variety of pendent claims predicated upon Commonwealth law. Some three months after the filing of the complaint, the district court dismissed it with prejudice under Fed.R.Civ.P. 41(b) because of plaintiffs' lack of prosecution and disregard of a court order. The plaintiffs now appeal, arguing that such a drastic sanction was unwarranted under the circumstances. Except as to the disposition of the pendent claims, we find no abuse of discretion and therefore affirm.
 
 
 2
 The procedural history of this case can be summarized briefly. Plaintiffs filed their original complaint on February 8, 1989 (all dates are from that year) and an amended complaint as of right on March 6. On March 28, the district court, apparently in accordance with its practice in all civil RICO cases, issued a four-page form order calling for detailed explication of the factual underpinnings of the RICO claims. This order closed with the admonition: "Failure to timely and completely furnish all information called for in this order may result in dismissal of the RICO claim and/or other appropriate sanctions." (Emphasis in original.) Also on March 28, defendant Chase Manhattan Bank, N.A. ("Chase") moved to dismiss for failure to state a claim, and defendant City Federal Savings Bank ("City") moved for dismissal two days later for improper service of process. Plaintiffs never responded to the court order or to either motion to dismiss, nor did they seek an extension of time within which to respond. Accordingly, on April 17, the court sua sponte entered separate orders granting Chase's motion to dismiss, granting City's motion to dismiss, and independently dismissing the complaint "as to all plaintiffs for failure to answer the interrogatory" contained in the March 28 order; the court entered judgment that same day dismissing the complaint "without prejudice."
 
 
 3
 On April 26, the defendant Perez-Bachs moved to amend the judgment to provide for dismissal with prejudice, and defendant Banco Nacional, N.A. ("Nacional") sought the same relief in a motion filed on May 3.[1] Two days later, in their first court filing since the March 6 amended complaint, the plaintiffs submitted what was captioned simply a "motion." There, after intimating that their prolonged silence was attributable to "extreme" financial pressures caused by the defendants' "outrageous" conduct, the plaintiffs indicated that they were "working very hard" to prepare a "very extensive and detailed amended complaint," which would be "in full compliance" with the March 28 order and which was "expected to be filed within the next 10 days." This motion, however, failed to respond directly to the two pending motions to amend the judgment, and the relief requested was simply that the court "take notice of what has been transpiring between the parties in this case." On May 11, six days later, the court rejected plaintiffs' motion as "evasive and superficial" and, "[b]ased upon the argument and authorities cited in" Nacional's motion, ordered that the judgment be amended to read "with prejudice."[2] The amended judgment, dismissing the complaint with prejudice, was issued on May 25 and was made effective as of April 17 nunc pro tunc. Without seeking any further relief below, plaintiffs filed the instant appeal.
 
 
 4
 Rule 41(b) expressly authorizes a district court to dismiss a case with prejudice for "failure of the plaintiff to prosecute or to comply with ... any order of court...." A district court's "choice of remedy under Rule 41(b) is reviewable only for abuse of discretion," HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc., 847 F.2d 908, 916-17 (1st Cir.1988), and claims of such abuse of discretion typically "have not received a sympathetic ear from us." Damiani v. Rhode Island Hospital, 704 F.2d 12, 17 (1st Cir.1983) (collecting cases). At the same time, this "does not mean we have rubber-stamped the decisions of the district court." Id. Dismissal with prejudice "is a harsh sanction," Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir.1971), which runs counter to our "strong policy favoring the disposition of cases on the merits." Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir.1977). As a result, we have indicated that such an option should be employed only when a plaintiff's misconduct has been extreme. See, e.g., Enlace Mercantil Internacional, Inc. v. Senior Industries, Inc., 848 F.2d 315, 317 (1st Cir.1988). A finding of extreme misconduct is warranted in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct ...," Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987), or some other aggravating circumstance such as "prejudice to the defendant, glaring weaknesses in the plaintiff's case, and the wasteful expenditure of a significant amount of the district court's time." Enlace Mercantil, 848 F.2d at 317 (footnotes omitted). In reviewing the trial court's actions, we consider "all pertinent circumstances," Richman, 437 F.2d at 199, in accordance with an "open-ended balancing test." HMG Property, 847 F.2d at 917 n. 13.
 
 
 5
 We are persuaded that the district court did not abuse its discretion under the circumstances in resorting to the ultimate sanction of dismissal with prejudice. The plaintiffs' misconduct here can justifiably be considered extreme. They filed an initial complaint which was artlessly drafted and conspicuously deficient. They amended it once by adding a single paragraph. They then proceeded to disappear for two months, ignoring during such time both a court order and a series of pivotal defense motions. The court order required that a statement from plaintiffs be filed within fifteen days and explicitly warned that noncompliance might result in dismissal. The plaintiffs neither complied nor requested an extension of time in which to do so. Two motions to dismiss similarly received no response. Following the court's dismissal without prejudice on April 17, plaintiffs never sought to have the judgment altered. No objections were filed to the subsequent defense motions to amend the judgment to read with prejudice. When plaintiffs finally resurfaced on May 5, they provided no explanation for their inaction other than to indicate they were under "stress." In their "motion" of that date, instead of responding to the pending motions to amend the judgment, they requested as relief simply that the court "take notice of what has been transpiring between the parties." Following the court's dismissal of the case with prejudice, plaintiffs again failed to move under Rule 59(e) to have the judgment altered. And although they had represented on May 5 that an amended complaint would be completed within ten days that would particularize their factual allegations as requested by the March 28 order, such a complaint has never materialized; plaintiffs never proffered any such complaint to the district court in conjunction with a request for postjudgment relief, nor have they appended one to their memorandum on appeal.
 
 
 6
 This pattern of behavior can reasonably be construed as an indication of "plaintiffs' lack of interest in vindicating whatever rights they might have had." Zavala Santiago, 553 F.2d at 713. The repetition involved in their inaction suggests conduct of a deliberate rather than inadvertent nature. Their disobedience of a court order containing an explicit warning that noncompliance could lead to dismissal, their repeated failure to respond to defense motions, and the absence of any reasonable explanation for such misbehavior--all are factors counseling strongly in favor of dismissal. In addition, our review of the amended complaint convinces us that plaintiffs' case suffers from "glaring weaknesses."[3] Enlace Mercantil, 48 F.2d at 317. In light of such basic infirmities in the complaint, and upon consideration of plaintiffs' rather muddled May 5 motion, the district court could justifiably have concluded that affording plaintiffs an opportunity to resubmit another complaint would likely have been an exercise in futility.
 
 
 7
 Several of the relevant factors here, of course, pull in the opposite direction. The time involved was relatively short; little more than three months elapsed between the filing of the original complaint and the court order dismissing the case with prejudice. The district court had not expended a significant amount of time on the case. Little if any prejudice to the defendants' tactical posture had ensued from the delay, or would have ensued from permitting the plaintiffs to submit another complaint. And some lesser sanction--such as dismissal with leave to file an amended complaint within a short period of time, possibly in conjunction with an award of costs to defendants and the imposition of a fine against counsel--might have sufficed both to compensate for plaintiffs' inaction and to prevent any continuation thereof. Were lack of prosecution the only form of misconduct involved here, we would find these factors controlling. As mentioned above, dismissal on account of delay alone is appropriate only in cases of "extremely protracted inaction (measured in years)." Cosme Nieves, 826 F.2d at 2. And we have cautioned that a district court should resort to dismissal as a penalty for delay only after determining "that none of the lesser sanctions available to it would truly be appropriate." Zavala Santiago, 553 F.2d at 712 (footnote omitted); accord, e.g., Enlace Mercantil, 848 F.2d at 317-18 (dismissal with prejudice for failure to prosecute was "excessive" in light of "more appropriate" sanction of conditional dismissal).
 
 
 8
 Yet plaintiffs here were guilty not only of simple delay but of disobedience of a court order as well. In such a case, the amount of time elapsed obviously becomes less pivotal. See, e.g., Zavala Santiago, 553 F.2d at 712-13 (even though case had been pending "less than four months" and had occupied "very little" of district court's time, Rule 41(b) dismissal was appropriate given plaintiffs' noncompliance with order to file affidavits of witnesses and counsel's unexcused failure to appear at pretrial conference). And consideration of lesser sanctions in such context becomes less of an imperative: "the law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." HMG Property Investors, 847 F.2d at 918. Penalties for noncompliance with court orders serve not only to punish the offending party but also to deter putative offenders in future cases. See, e.g., Zavala Santiago, 553 F.2d at 713; cf. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642-43, 96 S.Ct. 2778, 2780-81, 49 L.Ed.2d 747 (1976) (per curiam) (Rule 37 sanctions for noncompliance with discovery orders); Damiani, 704 F.2d at 15-16 (same). Consequently, even where a lesser sanction might suffice to forestall any further misconduct by a "duly chastened" party in the case at hand,[4] "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court ... to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League, 427 U.S. at 642, 643, 96 S.Ct. at 2780, 2781.
 
 
 9
 The need for such deterrence, and the corresponding need for expeditious and orderly progress of the litigation, were particularly pronounced here. "A civil RICO suit is in effect quasi-criminal in nature." Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 298 (1st Cir.1986). The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. The court's March 28 order in the instant case, calling for a detailed explication of the factual circumstances underlying the RICO claims, was designed to accomplish this very purpose. Given the plaintiffs' blithe and unexplained disregard of such order, we think dismissal was within the district court's discretion both as a suitable penalty in the instant case and as an appropriate deterrent in others. "The day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience." Damiani, 704 F.2d at 16. This admonition holds especially true in the civil RICO context.[5]
 
 
 10
 For these reasons, we find no abuse of discretion in the district court's dismissal of the RICO claim. We likewise affirm as to the Bank Holding Company Act claim, given the interrelated nature of the two federal claims here and the attention each received below. We differ only with respect to the pendent claims. The district court's blanket dismissal with prejudice seemingly encompasses all claims in the amended complaint. The federal claims having been dismissed, we think the preferable course is to dismiss the pendent claims without prejudice for want of jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 11
 As to the federal claims, the judgment of dismissal with prejudice is affirmed.
 
 
 12
 As to the pendent claims, the judgment is vacated and the case remanded with directions to enter a judgment dismissing the pendent claims without prejudice.
 
 
 
 [1]
 Apparently acting before receipt of the court's April 17 dismissal order, Nacional on April 20 had moved to dismiss for noncompliance with the earlier order and on April 21 had sought an order compelling discovery, and Perez-Bachs also on April 21 had moved for partial summary judgment. These motions were effectively mooted by the April 17 order
 
 
 [2]
 The May 11 order in its entirety read as follows:
 Based upon the argument and authorities cited in the motion (# 31) [Nacional's motion to reconsider judgment], the judgment entered will be amended to read "with prejudice." Clerk to act accordingly. We note, in this respect, plaintiffs' evasive and superficial motion filed 5/5/89, docket # 32. Said motion, if at all, confirms the reasonability of the action taken by the court today. The same disposition applies to docket # 30, i.e., a motion requesting the same relief filed by defendant Perez-Bachs.
 
 
 [3]
 The RICO allegations are especially deficient. For example, of the various so-called "predicate acts" charged in the complaint, the only ones falling within the statutory definition of "racketeering activity," 18 U.S.C. Sec. 1961(1), consist of vague references to mail and wire fraud. Plaintiffs have made no attempt to comply with the requirement of Fed.R.Civ.P. 9(b) that "the circumstances constituting fraud ... shall be stated with particularity." See, e.g., New England Data Services, Inc. v. Becher, 829 F.2d 286, 291 (1st Cir.1987) ("In RICO, the plaintiff must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating that fraud."). The complaint also falls well short of alleging a "pattern" of racketeering activity in the sense that the predicate acts not only are "related" but "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); see, e.g., Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir.1990). Nowhere is there any suggestion, for example, that defendants might have visited any such allegedly fraudulent scheme on other individuals. See, e.g., Roeder v. Alpha Industries, Inc., 814 F.2d 22, 31 (1st Cir.1987). We note as well that the definition of "enterprise" and the plaintiffs' standing to maintain this action are each problematic. The anti-tying claim under the Bank Holding Company Act is similarly infirm. There is no allegation in the complaint, for example, that any of the defendant banks provided any service "on the condition or requirement" that the plaintiffs obtain some additional service from that defendant. 12 U.S.C. Sec. 1972(1); see, e.g., Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984)
 
 
 [4]
 Of course, it can hardly be said that plaintiffs were at all "chastened" by the court's initial dismissal order on April 17, given their subsequent failure to respond to the motions to amend judgment and their continued lack of diligence generally
 
 
 [5]
 Visiting "the sins of the attorney ... on the client" is of course inherent in "the nature of the adversary system." Damiani, 704 F.2d at 16; see Link v. Wabash Railroad Co., 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962). And as we noted in Zavala Santiago, "[a]lthough courts have been reluctant to impute the misconduct of plaintiffs' counsel to the plaintiffs in cases where there have been relatively short periods of unreasonable delay, ... we have less reluctance here where the nature of the claim suggested the need for expedition." 553 F.2d at 713 n. 2. In any event, given the tenuous nature of the federal claims here, we perceive no great hardship in relegating plaintiffs to the Commonwealth courts, where they seemingly should have been all along