# United States Court of Appeals
## For the First Circuit

No. 02-1387

BETHZAIDA CINTRÓN-LORENZO ET AL.,

Plaintiffs, Appellants,

v.

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Nicolas Nogueras on brief for appellants.
    Roberto J. Sánchez Ramos, Solicitor General, Vanessa Lugo
Flores, Deputy Solicitor General, and Jaime Mercado-Almodóvar,
Assistant Solicitor General, on brief for appellees.

December 10, 2002

**SELYA**, <u>Circuit Judge</u>.  This appeal arises out of an unsuccessful suit by plaintiff-appellant Bethzaida Cintrón-Lorenzo (Cintrón) against her former employer, defendant-appellee Departamento de Asuntos del Consumidor (DACO).[1]  Before us, Cintrón challenges both the district court's order dismissing her case for want of diligent prosecution and its sequential order denying her motion for reconsideration.  For the reasons elucidated below, we reject her appeal.

The subsidiary facts are fairly straightforward (although the record is ragged and the briefs confuse certain of the dates).  DACO hired  Cintrón as an attorney in or around 1997.  The working relationship did not go smoothly.  As a result, Cintrón filed a multifaceted claim of discrimination with the Equal Employment Opportunity Commission (EEOC) during the year 2000.  In that document she charged DACO with violating the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, by refusing to accommodate her physical disability, and with political discrimination based upon her support of the Popular Democratic Party.  In due course, the EEOC issued a right-to-sue letter.

---

[1]Cintrón's parents and niece also appear as plaintiffs and appellants.  Because their claims are purely derivative, we treat the case as if  Cintrón was the sole plaintiff and appellant.  By the same token, Cintrón sued not only DACO (an agency of the Puerto Rican government) but also several public officials, including Angel E. Rotger-Sabat, José A. Alicea-Rivera, José M. Cintrón-García, Zenaida García-Villegas, Gladys E. Méndez-Hernández, Gerardo R. Picó-Del Rosario, and Elvia M. Camayd-Vélez.  We refer to the defendants, collectively, as DACO.

On August 15, 2000, Cintrón, armed with the right-to-sue letter, filed a pro se complaint in the federal district court. She again claimed that DACO had violated both the ADA and her right to free political association under the First Amendment. For good measure, she also alleged, inter alia, violations of the Fifth and Fourteenth Amendments; 42 U.S.C. §§ 1983 and 1985; various sections of the Puerto Rico Constitution; and a potpourri of local laws. In an amended complaint, filed as a matter of right, see Fed. R. Civ. P. 15(a), she added a Rehabilitation Act claim under 29 U.S.C. § 794.

On November 29, 2000, the district court, citing Cintrón's failure to seek the issuance and service of summonses, ordered her to show cause why her case should not be dismissed for lack of diligent prosecution. See Fed. R. Civ. P. 4(m) (requiring service within 120 days from the filing of a complaint). The court's order was entered on the docket on December 4, 2000, and, shortly thereafter, Cintrón served the defendants. She also filed a written rejoinder in which she stated that difficulties in trying to obtain legal representation had led to the delay. She indicated that she would need an additional forty-five to sixty days to retain counsel. The court did not respond but, by not pressing the matter, effectively granted her the desired grace period.

On February 16, 2001, Cintrón requested a further sixty-day extension in order to procure legal representation. Four days

later, DACO served the plaintiff with a motion to dismiss the action for lack of subject matter jurisdiction and failure to state a claim.[2]  On March 15, 2001, DACO gave notice that it had served the plaintiff with a supplementary motion to dismiss.  Cintrón did not respond to either of these filings.

In April of 2001, the further sixty-day extension sought in Cintrón's February 16 motion expired without an entry of appearance on her behalf.  She remained mute.  On June 4, 2001, DACO filed yet a third motion to dismiss, but Cintrón again neglected to reply.

On June 21, 2001, the district court advised Cintrón that it would give her until July 2, 2001 to retain counsel and/or answer the pending motions.  In that order, the court noted that it had, in effect, given Cintrón extra time; and that the extensions she had sought had "long elapsed."  The court explicitly warned Cintrón that "[t]his [the grace period lasting through July 2, 2001] is the last extension before considering dismissing the case for lack of diligent prosecution."  The court's admonition went unheeded:  Cintrón did nothing, and, on July 16, 2001, the district court, true to its word, dismissed the case under Fed. R. Civ. P. 41(b) for lack of prosecution.

_____

[2]Alternatively, DACO sought a stay of proceedings pending the Supreme Court's decision in a case then under consideration.  That case has since been decided.  See Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001).  The stay request is, therefore, moot.

On July 27, 2001, an attorney filed an entry of appearance on Cintrón's behalf, along with a motion for reconsideration.[3] The court summarily denied the motion. This appeal followed.

We turn first to the district court's dismissal of the case for want of diligent prosecution. Cintrón's basic argument is that she was suffering from many afflictions (physical, psychological, and emotional) during the spring of 2001. These culminated in the performance of a biopsy on June 8, followed by a cancer diagnosis two weeks later. The problem, however, is that she failed to bring any of these travails to the attention of the district court in a timeous fashion. Instead, Cintrón dawdled for upwards of seven months; her only meaningful response during that period was a filing, early on, that attributed her dilatoriness to

---

[3]Cintrón's counsel styled this motion as a motion for relief from judgment under Fed. R. Civ. P. 60(b) and contended that the district court should set aside its earlier order based upon excusable neglect. That creates an immediate problem for Cintrón, as a Rule 60(b) motion does not toll the running of the appeal period on the original judgment (and, therefore, an appeal from the denial of such a motion does not bring the merits of the underlying judgment up for review). See Karak v. Bursaw Oil Corp., 288 F.3d 15, 18-19 (1st Cir. 2002); Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 2 (1st Cir. 1989). Here, however, Cintrón's motion was filed within ten days of the entry of the district court's original judgment. Since we are not bound by a party's choice of label, we elect, favorably to Cintrón, to consider the motion as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). See Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1513-14 (1st Cir. 1991); Silk v. Sandoval, 435 F.2d 1266, 1267-68 (1st Cir. 1971). This enables us to reach the merits of the original order of dismissal.

difficulty in securing the services of outside counsel. In that filing, she asked for an additional sixty days within which to retain counsel. But that period — like the initial forty-five-to-sixty-day period that she had specified — came and went without the achievement of any noticeable progress. During and after that interval, she neither secured counsel, nor answered the several pending motions, nor apprised the court of a need for more time, nor revealed that her efforts were hampered by medical problems.

Against this backdrop, the order of dismissal cannot be faulted.[4] A district court, as part of its inherent power to manage its own docket, may dismiss a case sua sponte for any of the reasons prescribed in Fed. R. Civ. P. 41(b). E.g., Link v. Wabash R.R. Co., 370 U.S. 626, 629-31 (1962). Lack of diligent prosecution is such a reason. Id. at 630-31. We review the district court's dismissal of a case for want of prosecution only for abuse of discretion. Id. at 633; Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002). In undertaking that review, we consider all pertinent circumstances and balance the authority of the court to prevent undue delay against the policy of

_____

[4]We analyze this issue in terms of Fed. R. Civ. P. 41(b) and the district court's inherent case-management powers. In undertaking this task, we note that the plaintiff has not developed any argument based upon the district court's local rule governing dismissals for lack of prosecution, D.P.R.R. 313.1, and, thus, we do not consider that rule. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that issues not squarely raised on appeal are deemed abandoned).

the law favoring the disposition of cases on the merits. See HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 917 (1st Cir. 1988); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971). We remain mindful, however, that courts — especially trial courts — "must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants." Batiz Chamorro v. P.R. Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002).

Here, the court exhibited extraordinary patience. First, it warned Cintrón, as early as December of 2000, that she was risking dismissal for lack of prosecution. Second, when Cintrón requested up to sixty days to put her case back on track, the court gave her that indulgence. Third, when she sought a further sixty-day period within which to regroup, the court again indulged her (and, indeed, effectively gave her twice that amount of time). Even at that juncture, the court did not dismiss the action outright, but, rather, issued another warning and allowed Cintrón a further opportunity to make amends. Cintrón rewarded this magnanimity by stonewalling: she never communicated with the court in an effort either to explain her personal situation or to shed light on what efforts she was making to obtain legal representation. In the end, the court was faced with Cintrón's protracted — and largely unexplained — noncompliance with time limits imposed by standing rules and specific orders. This

protracted noncompliance, in the teeth of explicit warnings, amply justified a termination of the action. See Top Entertainment Inc. v. Ortega, 285 F.3d 115, 118-19 (1st Cir. 2002); Figueroa Ruiz v. Alegria, 896 F.2d 645, 648 (1st Cir. 1990); cf. Tower Ventures, 296 F.3d at 46 (explaining that "disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)").

We think it is particularly noteworthy that Cintrón requested successive extensions of time within which to retain counsel, thus impliedly promising compliance by the end of that aggregate period. As we have said, "[w]hen a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline." Tower Ventures, 296 F.3d at 47. Cintrón's failure to achieve the time line that she herself had suggested weighs heavily against her. See id. (holding that, absent "excusatory circumstances," a litigant's failure to adhere to such a deadline "warrants an inference of deliberate manipulation").

Cintrón's argument that pro se plaintiffs deserve greater leniency strikes us as disingenuous. There are, of course, some settings in which such leniency is appropriate. See, e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23-24 (1st Cir. 2000). Here, however, the district court's

intentions were plain; it issued two explicit warnings. Equally as important, Cintrón herself is an attorney (albeit not a member of the federal bar) who should have been well aware of the consequences of a dogged failure to comply with court orders. At the very least, Cintrón could — and should — have notified the court both of her inability to comply and of the reasons for that noncompliance. Having been warned twice that noncompliance could result in dismissal, she maintained a stoic silence at her peril.

We turn next to Cintrón's motion for reconsideration. However that motion is characterized, see supra note 3, we review the district court's disposition of it for abuse of discretion. See Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992) (explicating standard of review referable to Rule 60(b) motions); Appeal of Sun Pipe Line Co., 831 F.2d 22, 24-25 (1st Cir. 1987) (explicating standard of review referable to Rule 59(e) motions). We discern no abuse of the trial court's discretion here.

For convenience, we use the Rule 60(b) standard (although the outcome would be the same under the jurisprudence of Rule 59(e)). We have made it transparently clear that relief under Rule 60(b) "is extraordinary in nature." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002). Accordingly, "motions invoking that rule should be granted sparingly." Id. In considering such a motion, we recognize the district court's "intimate, first-hand

knowledge of the case," and, thus, defer broadly to that court's informed discretion. Id.

Cintrón claims that her failure to prosecute was the result of excusable neglect (and, therefore, should have been forgiven). She identifies her personal problems and her inability to retain counsel as exceptional circumstances justifying relief from judgment. We reject this proffer. The determination of what constitutes excusable neglect in a given case requires that the court take into account the totality of the circumstances surrounding the movant's omissions. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); Dávila-Álvarez v. Escuela de Medicina, 257 F.3d 58, 64 (1st Cir. 2001).

At a bare minimum, a party who seeks relief from judgment on the basis of excusable neglect must offer a convincing explanation as to why the neglect was excusable. Graphic Comm'ns Int'l Union v. Quebecor Printing Prov., Inc., 270 F.3d 1, 5 (1st Cir. 2001); Hosp. del Maestro v. NLRB, 263 F.3d 173, 175 (1st Cir. 2001) (per curiam). Cintrón has not carried this burden: the length of the delay was inordinate in this case; Cintrón's condition varied over time; and even if her ailments interfered to some extent with her ability to secure counsel — a matter on which we take no view — she offers no credible excuse for not communicating her plight to the district court in a timely fashion. When a litigant (especially a litigant who is trained as a lawyer)

elects to file a suit pro se, her duty of attending to the case is not automatically excused by personal tragedy or emotional upheaval.

The plaintiff's failure to communicate with the court brings this point into sharp focus. As we explained two decades ago, a party's "first obligation is to make every effort to comply with the court's order. The second is to seek consent if compliance is, in fact, impossible. And the third is to seek court approval for noncompliance based on a truly valid reason." Damiani v. R.I. Hosp., 704 F.2d 12, 17 (1st Cir. 1983). Cintrón blatantly violated this code of conduct: among other things, she failed not only to inform the district court of her alleged impairments but also to seek judicial approval for her repeated noncompliance with procedural rules, court orders, and a series of deadlines. Even taking her description of her afflictions at face value, nothing about them excuses this persistent failure to communicate. Giving due weight to all of the circumstances surrounding Cintrón's extensive neglect, we would be hard pressed to find it excusable. A fortiori, we cannot find that the district court's denial of her motion for relief from judgment was an abuse of discretion.

That ends this aspect of the matter. Although Cintrón's case evokes sympathy, we often have remarked that hard cases have a propensity to make bad law. E.g., Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 487 (1st Cir. 1989). Bearing in mind that the

-11-

district court "is best positioned to determine whether the justification proffered in support of a Rule 60(b) motion should serve to override the opposing party's rights and the law's institutional interest in finality," Karak, 288 F.3d at 19, we conclude that the circumstances to which Cintrón alludes, taken as a whole, are not sufficiently excusatory to demand the extraordinary relief that she requests.

We need go no further. "In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps that are necessary to protect his or her own interests." Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993). Given Cintrón's patent disregard of this duty, extending over many months, we hold that the district court acted within its discretion both in dismissing Cintrón's case for lack of prosecution and in denying her motion for reconsideration.

**Affirmed**.