# United States Court of Appeals
## For the First Circuit

No. 03-1468

MAGDALENA POMALES,

Plaintiff, Appellant,

v.

CELULARES TELEFÓNICA, INC; VERIZON WIRELESS PUERTO RICO, INC.,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Maricarmen Almodóvar Díaz and Lilliam Mendoza were on brief for appellant.

Mariela Rexach-Rexach, José Dávila-Caballero, and Schuster Usera & Aguiló LLP were on brief for appellees.

August 26, 2003

**LYNCH**, **Circuit Judge**.  Magdalena Pomales brought this action against her employer for sexual harassment, discrimination and retaliation.  Shortly after discovery began, however, Pomales fired her lawyer.  The district court, having earlier warned that it would not modify or extend its scheduling order, refused to permit Pomales's counsel to withdraw until substitute counsel could file an appearance.  For four months, the litigation stalled; no new counsel appeared, and Pomales failed to proceed with discovery pro se.  On January 13, 2003, the district court -- acting sua sponte and without warning to Pomales -- dismissed her complaint with prejudice for failure to prosecute.  Pomales appeals.

While the question is admittedly a close one, we conclude that it was not within the discretion of the district court to dismiss with prejudice under the unique circumstances of this case. Accordingly, we reverse.

**I.**

The facts of Pomales's sexual harassment and sex discrimination claims are not pertinent to the issue on appeal and need not be recited here.  But because the district court's dismissal for failure to prosecute requires us to decide whether Pomales's conduct indicated a "lack of interest in vindicating whatever rights [she] might have had," Zavala-Santiago v. Gonzalez-Rivera, 553 F.2d 710, 713 (1st Cir. 1977), we recount the procedural history of this litigation in some detail.

On December 27, 2000, less than a month after she was fired from her job as a sales consultant for Celulares Telefónica, Inc. (CTI), Pomales filed a charge of employment discrimination with the government of Puerto Rico. She also initiated a labor grievance under the terms of her collective bargaining contract. One day later, she filed a charge of discrimination (predicated on sexual harassment, sexual discrimination and retaliation) with the Equal Employment Opportunity Commission (EEOC). After processing her charge, the EEOC issued a right-to-sue letter to Pomales on November 29, 2001.

On February 20, 2002, within the allotted ninety days of receiving her right-to-sue letter, Pomales filed the instant action against CTI. The complaint alleged sexual harassment, sex discrimination, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e et seq.; the Civil Rights Act of 1991; 42 U.S.C. § 1981; and several Puerto Rico statutes. Pomales later amended her complaint to include an action under § 606 of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1166.

In the early phases of the case, Pomales prosecuted her lawsuit. She sent her first set of interrogatories and her first request for production of documents on April 25, 2002. On July 15, she submitted her Initial Scheduling Conference Memorandum. She also produced numerous documents to CTI. The Initial Scheduling Conference was held on July 19, 2002, and Pomales's counsel duly

-3-

attended.  On August 7, 2002, the district court issued the scheduling order for discovery and trial: depositions were to be held in September and October; dispositive motions were due by February 17, 2003; the pretrial conference was set for April 14; and trial was scheduled for April 28.  The court warned: "These dates shall not be changed."

With the schedule thus set, Pomales continued actively to prosecute her case.  On August 8, 2002, she sent CTI her second request for production of documents and her second set of interrogatories.  On August 19, she amended her complaint yet again to add Verizon Wireless Puerto Rico, Inc., the successor company of CTI, as a co-defendant.  And on September 3, Pomales sat for the first session of her scheduled deposition.

On September 18, however, Pomales requested that her lawyer, Manuel Durán-Rodríguez, withdraw from the case.[1]  The next day, Durán filed a motion requesting leave to withdraw and, if leave were granted, that the court allow Pomales a reasonable period to find a new lawyer.  On October 8, the district court denied the motion to withdraw.  It ordered Durán to remain the attorney of record until substitute counsel could enter an appearance on Pomales's behalf.  The court's order contained no deadline for Pomales to find new counsel, nor did it caution

---

[1] In her appellate brief, Pomales explains only that "[i]t had become apparent . . . that the trust upon which the attorney-client relationship is founded[] had been irreparably severed."

Pomales that she was obligated to proceed with discovery regardless of her ability to obtain new representation.

At this point, the litigation effectively stalled. The scheduled depositions were postponed and the exchange of discovery ceased. On November 15, over a month after Pomales dismissed her lawyer, CTI filed a motion complaining of the delay in discovery and asking that the court order Pomales "to announce new legal representation within a reasonable time limit." CTI served this motion both on Durán and on Pomales at her home address. Pomales did not respond, however, and the district court did not act on the motion. On November 27, Durán filed a second motion requesting leave to withdraw. Durán explained that he could not continue to represent Pomales, notwithstanding the court's order that he continue as counsel of record, because Pomales had specifically withdrawn authorization for him to act on her behalf and insisted that her legal file be returned to her. A copy of this motion was mailed to Pomales's home. The district court, however, did not rule on the renewed plea for permission to withdraw.

On December 18, CTI filed a second motion requesting that Pomales be ordered to announce new counsel, again serving the motion on Pomales individually.[2] By failing to retain new counsel, CTI argued, Pomales had "singlehandedly stopped the discovery

_____

[2] In addition, CTI requested an extension of the deadline for dispositive motions and the arrangement of a status conference immediately upon the appointment of new counsel for Pomales.

process and the proceedings in the captioned case." The district court did not respond. On January 9, 2003, CTI filed an "urgent" motion seeking an order that Pomales appear for the conclusion of her deposition and respond to CTI's outstanding interrogatories and requests for production of documents. CTI argued that Pomales's conduct jeopardized its ability to comply with the court's February 17 deadline for dispositive motions. Like the others, this motion was served on Pomales at her home address. CTI did not ask for dismissal of the action.

On January 13, 2003, the district court acted, but without ruling on any of the outstanding motions. Instead, the court dismissed Pomales's complaint with prejudice, reasoning that nearly four months had elapsed since the initial request for withdrawal without any indication that Pomales could or would secure new counsel:

> Due to Plaintiff's failure to announce new counsel [or to allow] her current counsel to represent her, Plaintiff has stymied the entire discovery schedule this Court set forth in its Initial Scheduling Conference Order. It is for Plaintiff's complete disregard of this Court and its orders and for her lack of prosecution that, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, the Court hereby DISMISSES the above captioned complaint WITH PREJUDICE.

On January 24, Pomales, representing herself, moved to amend the judgment to allow her six days to obtain new counsel. The court did not act on this motion. On February 4, Pomales, now

-6-

represented by new counsel, filed a motion to set aside the judgment.

Attached to Pomales's February 4 motion was a sworn statement in which she explained her failure to obtain new counsel. According to the statement, Pomales had approached another attorney about taking over her case in October 2002. The new attorney indicated that he had another trial scheduled for April 2003, but that he would contact the district court and attempt to postpone Pomales's trial. In November 2002, the attorney contacted Pomales and asked her to obtain certain documents related to her case. Based on the new attorney's professed interest and his request for documents, Pomales explained, she assumed that he had taken her case and that he had filed, or soon would file, an appearance on her behalf. On January 22, Pomales said, she called the attorney to check on the status of her case, but he told her he had forgotten about it and could not represent her. Pomales retrieved her legal file from the attorney's office on January 23. On January 24, she was "astonished" to receive by mail a copy of the district court's order dismissing her case. She immediately went to the federal courthouse and filed her pro se motion to amend the judgment.

On February 25, 2003, the district court denied Pomales's motion to set aside the judgment. The court did not comment on Pomales's proffered explanations, resting instead on its original

-7-

interpretation of Pomales's conduct: "Plaintiff's disregard for this Court's rules and orders was apparent and was the basis for the Court's dismissal of Plaintiff's claims. The Court stands by its original analysis . . . ."

Pomales appeals both the dismissal of her complaint and the denial of her motion to set aside the judgment.

## II.

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." Link v. Wabash R.R., 370 U.S. 626, 629 (1962). This power, which is of "ancient origin," id. at 630, is a necessary component of the authority and responsibility of the district courts to establish orderly processes and manage their calendars. Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). Dismissal is but one of many sanctions available for these purposes. See Zavala-Santiago, 553 F.2d at 712 n.1 (listing a variety of lesser sanctions including warnings, fines, and imposition of costs and fees). Because the choice among available sanctions "is a fact-specific matter within the ken of the district court," Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996), our review is only for abuse of discretion. See Chamorro v. P.R. Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002).

Even so, as this court has often recognized, the sanction of dismissal with prejudice for want of prosecution is a unique and

awesome one, foreclosing forever the plaintiff's opportunity to obtain judicial redress.[3]  See Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 (1st Cir. 1999) (describing dismissal with prejudice for failure to prosecute as "drastic"); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir. 1990) ("the most severe sanction"); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) ("a harsh sanction").  Disposition on the merits is favored.  Ortiz-Anglada, 183 F.3d at 66.  Accordingly, while we do not doubt that district courts possess the power to order dismissal with prejudice in appropriate cases, "fairness requires that some limits be placed on its use." Velazquez-Rivera, 920 F.2d at 1076. Dismissal with prejudice for failure to prosecute is appropriate in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme-Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987); see 9 C. Wright & A. Miller, Federal Practice & Procedure § 2369 (2d ed. 1995).  And where the case is close, courts should prefer less severe sanctions that preserve the possibility of disposition on the merits.  See Velazquez-Rivera, 920 F.2d at 1079.

This is one such close case.  Pomales knew that the district court had announced a firm schedule for discovery and

---

[3] Rule 41(b) makes clear that dismissals for want of prosecution are with prejudice, unless the district court otherwise specifies.

dispositive motions. By firing her first lawyer, refusing to allow him to act on her behalf while she searched for new counsel, failing to respond to CTI's interim requests for discovery, and failing to announce new counsel even as the deadline for dispositive motions approached, Pomales essentially ensured that neither party would meet the district court's deadlines -- deadlines the court had originally warned would not be altered. Cf. Robson, 81 F.3d at 4 (repeated disobedience of a scheduling order is inherently prejudicial and may warrant dismissal). Certainly the district court's frustration at this conduct is understandable, and sanctions of some form were plainly appropriate.

Nevertheless, dismissal with prejudice was not appropriate in this case. Three considerations underlie this conclusion: (1) Pomales prosecuted her claims diligently until she fired her attorney; (2) the district court did not give Pomales fair warning of its inclination to employ so severe a sanction; and (3) the four-month delay she caused did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice.

Pomales had diligently prosecuted her claims, first before the EEOC and then before the district court, for more than a year and a half before she discharged her attorney and caused the case to stall for four months. There is no suggestion in the

-10-

record, and CTI does not contend, that Pomales dismissed her lawyer for the purpose of stalling the proceedings. Moreover, if Pomales's sworn statement explaining the delay is credited (and the district court's February 25, 2003 order gives no reason <u>not</u> to credit it), Pomales was diligent in searching for new counsel in the interim. Certainly she reacted quickly and diligently to the court's dismissal of her claims, filing a pro se motion to alter the judgment on the very day she received notice of the court's action and later filing a counseled motion to set aside the judgment. See <u>Ortiz-Anglada</u>, 183 F.3d at 67 (holding dismissal with prejudice improper and emphasizing that the plaintiff, who had no reason to suspect her case was at risk, "responded promptly to the unexpected dismissal with a motion to reconsider it"); <u>Cosme-Nieves</u>, 826 F.2d at 2 (holding dismissal with prejudice improper and noting that the plaintiffs "responded immediately to the only warning they received -- the <u>sua</u> <u>sponte</u> dismissal -- with a motion to the court"). Nor is there any hint of deliberate efforts by Pomales to delay the case or prejudice the defendants.

Pomales also had little reason to believe she was facing imminent dismissal of her complaint. As a layperson, she may not have appreciated the risk inherent in delay.[4] She was not given a

---

[4] Of course, Pomales's temporary pro se status did not absolve her of the need to comply with the Federal Rules of Civil Procedure or the district court's procedural rules. <u>FDIC</u> v. <u>Anchor Props.</u>, 13 F.3d 27, 31 (1st Cir. 1994). But it does heighten this court's concern where, as here, the district court did not give warnings or

deadline for finding new counsel, nor was she told that she was still obligated to meet established discovery deadlines regardless of her ability to obtain a new lawyer. Nor did the opposing party seek dismissal. If the district court had given Pomales fair warning that it would dismiss her complaint if she did not soon announce representation or proceed pro se with discovery, our view of this case would be very different. See, e.g., Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir. 2002) (protracted noncompliance with court orders, "in the teeth of explicit warnings," justified dismissal with prejudice); Chamorro, 304 F.3d at 4-5 (dismissal justified where the plaintiff, despite being "suitably forewarned," nevertheless disobeyed a court order). In the absence of any such warning, Pomales's misconduct was not sufficiently "extreme" to justify dismissal with prejudice. See Velazquez-Rivera, 920 F.2d at 1078 (emphasizing the lack of fair warning to the plaintiff in reversing district court's dismissal for failure to prosecute).[5]

---

otherwise make clear its intentions. Cf. Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526-27 (1st Cir. 2002) (acknowledging that leniency for pro se litigants is sometimes appropriate, but holding that dismissal with prejudice for failure to prosecute was not an abuse of discretion because, inter alia, the district court gave the pro se litigant two explicit warnings before dismissing).

[5] This is not to suggest that explicit warnings are always required before dismissing under Rule 41(b) for failure to prosecute. Indeed, the Supreme Court has held that "the absence of notice as to the possibility of dismissal . . . [does not] necessarily render such a dismissal void." Link, 370 U.S. at 632.

It is true, as CTI emphasizes, that Pomales received copies of CTI's repeated motions to compel announcement of new counsel, so she cannot protest that she was unaware of the need to act soon. But Pomales was under the (mis)impression that she did, or would soon, have a new lawyer acting for her. Moreover, the district court failed to rule on the earlier motion seeking lesser sanctions.

Finally, the four-month delay imposed by Pomales's search for counsel is hardly the kind of "extremely protracted inaction (<u>measured in years</u>)," <u>Cosme-Nieves</u>, 826 F.2d at 2 (emphasis added), that ordinarily accompanies dismissals for failure to prosecute. Anticipating this concern, CTI points us to <u>Figueroa-Ruiz</u> v. <u>Alegria</u>, 896 F.2d 645 (1st Cir. 1990), in which this court upheld the dismissal with prejudice of a complaint filed only three months earlier. <u>See</u> <u>id.</u> at 646-47. But <u>Figueroa-Ruiz</u> only illustrates the kind of extreme misconduct that is missing in the instant case. Unlike Pomales, the plaintiffs in <u>Figueroa-Ruiz</u> disobeyed a court order containing an explicit warning that noncompliance could lead to dismissal. <u>Id.</u> at 648. Unlike Pomales, they had no explanation

_____

But the Court added that, in the absence of such a warning, the propriety of dismissal "turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." <u>Id.</u>; <u>see</u> <u>Velazquez-Rivera</u>, 920 F.2d at 1078 n.9. Unlike the Court in <u>Link</u>, we do not think the circumstances here indicate that the plaintiff had sufficient knowledge of the consequences of her conduct to justify dismissal without any warning from the district court.

for their misconduct other than that they were under "stress." Id. And unlike in this case, the record supported the inference that the plaintiffs' misconduct was "of a deliberate rather than inadvertent nature." Id. Not surprisingly, the court in Figueroa-Ruiz held that in the face of such flagrant misconduct, the fact that only three months had elapsed was "less pivotal." Id. In this case, by contrast, the fact that the delay was only four months in duration, combined with the comparatively limited culpability of Pomales's conduct, leads us to conclude that dismissal with prejudice was too harsh a sanction.

## III.

The judgment of dismissal with prejudice is **vacated** and the dismissal with prejudice is **reversed**; the case is **remanded** to the district court. On remand, the district court is free to consider lesser remedies for the delay occasioned by Pomales's dismissal of her attorney.