# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2025

Lyle W. Cayce

Clerk

No. 24-30740

———————————

Justin Miller, *doing business as* Miller Sports & Signs, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Ohio Security Insurance Company,

*Defendant—Appellee*.

———————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:22-CV-1141

———————————

Before King, Smith, and Douglas, *Circuit Judges*.

Per Curiam:[*]

After Justin Miller failed to appear for two consecutive status conferences, the district court dismissed with prejudice Miller's suit against his insurer. It also denied his subsequent Rule 60(b)(1) motion. Miller now appeals those decisions, but finding no reversible error, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30740

## I.

Appellant Justin Miller owned Miller Sports & Signs, LLC, a business struggling with debts from "predatory lenders," owing over $10,000 in outstanding taxes, and facing an array of other debts. After his prior insurance policy was canceled for non-payment, Miller—himself a newly licensed insurance agent—wrote his own policy for his business with Appellee Ohio Security. The business burned down six days later.[1] Miller filed an insurance claim, which Ohio Security investigated and denied, citing the policy's Concealment, Misrepresentation, or Fraud provision.[2]

After the denial, Miller filed this lawsuit seeking to recover insurance proceeds under the policy and damages for Ohio Security's alleged bad faith in denying the claim. While the suit was pending, Miller was arrested and charged with "false swearing," a charge "relate[d] directly to the insurance claim and fire," for statements made in connection with the Louisiana Office of State Fire Marshal's investigation of the fire.

The civil case continued after his arrest. On August 9, 2023, five months after the arrest, however, Miller's counsel in this case moved to withdraw for Miller's "failure to cooperate." On August 18, the magistrate judge held a telephone conference wherein he informed Miller and his counsel that the motion to withdraw would be granted and instructed them

---

[1] While the record does not reflect a definitive cause of the fire, Miller stated that he may have left a heat gun on.

[2] Below, Ohio Security alleged that, as part of his application, Miller misrepresented that there were no flammables used in his operation, misrepresented the nature of his business, and forged documents submitted to Ohio Security. Moreover, three days before the fire, Miller called his insurer and asked, in a recorded call, if there was a waiting period before he could file a claim on a new commercial policy and whether there was a separate endorsement "for an accident . . . like, if somebody, you know whatever, you know, left something on, so it, it, it caught fire or whatever."

to file a motion to stay the proceeding. Importantly, the magistrate judge "emphasized to [Miller] the need to be diligent in securing replacement counsel as he will be subject to all applicable rules and orders in his capacity as a *pro se* plaintiff." On August 22, the magistrate judge granted the motion to withdraw and ordered that Miller's "email address . . . and phone number . . . be added to the docket sheet so that Plaintiff receives notice of all filings until he obtains counsel."

That same day, Miller filed a motion to stay. On September 6, 2023, and over Ohio Security's opposition, the district court granted the motion to stay pending the criminal case and set an in-person status conference for March 1, 2024. Miller admits that he received notice of this order setting a status conference.

Yet, he failed to appear. As its March 1 minutes note, the district court then reset the conference for six months later, to September 20, 2024. On March 15, the district court amended its minutes, adding that "[t]his matter will be dismissed for lack of prosecution on September 20, 2024, if Plaintiff fails to appear."

On September 20, Miller—still *pro se*—again failed to appear for the status conference. Given his second failure to appear, the district court dismissed the case with prejudice. That same day, Miller enrolled new counsel and requested to reset the status conference. He then filed a Rule 60 motion seeking relief from the judgment of dismissal, citing "excusable neglect," which the district court denied without a written order. Miller timely appealed both the denial of Rule 60 relief and the dismissal of his case with prejudice, which we address in turn.

## II.

"Motions under Rule 60(b) are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on

appeal only for abuse of that discretion." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981). Therefore, "[it] is not enough that the granting of relief might have been permissible, or even warranted—denial must have been *so unwarranted* as to constitute an abuse of discretion." *Id.* (emphasis in original).

Rule 60(b)(1) allows relief for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), but "these terms are not wholly open-ended," *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985). Instead, we apply the *Pioneer* standard "to analyze excusable neglect under Rule 60(b)(1)." *D.R.T.G. Builders, L.L.C. v. Occupational Safety & Health Rev. Comm'n*, 26 F.4th 306, 312 (5th Cir. 2022) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). Under that standard, we look to "the danger of prejudice [to the defendant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. As the party seeking relief, Miller has the burden of establishing excusable neglect. *See D.R.T.G. Builders*, 26 F.4th at 312.

Ohio Security concedes that "[t]he issue in this case is not so much 'delay' but inaction." Indeed, as Miller points out in his brief and at oral argument, a remand from this court would restore this case to its pre-dismissal state: stayed pending the criminal proceeding. Nor does Ohio Security argue that it suffered prejudice or that Miller acted in bad faith. The question thus becomes whether Miller's reason for the inaction, including whether it was within his reasonable control, makes the denial of the Rule 60(b) motion "so unwarranted as to constitute an abuse of discretion." *See Pioneer*, 507 U.S. at 395.

Miller offers several reasons for his inaction. He argues that he "had dismissed his prior civil counsel and believed that his civil case could not be resume[d] until his criminal charges were resolved." He also believed that "his newly retained criminal defense attorney would keep the District Court informed of the status of his criminal charges." And he points to his lack of "familiar[ity] with federal procedure" and that he "did not receive proper notice due to PACER access issues." These reasons, according to Miller, were beyond his control, and thus, constitute excusable neglect.

We disagree: the reasons were well within his control or otherwise fail to constitute excusable neglect. His belief that his "civil case could not be resume[d] until his criminal charges were resolved" is plainly contradicted by the district court's order staying his case. That order simultaneously stayed the case until further of the court and set an in-person status conference. And he admits that he received notice of that order. Reading an order granting relief he himself sought and had notice of is plainly within his control.

Similarly, the scope of engagement of his criminal defense attorney was within Miller's control to ascertain. He could have asked his criminal defense counsel—who has made no appearance in the civil case—whether he would inform the district court of the status of the criminal charges. He offers no explanation as to why he failed to do so. Moreover, even if such status updates were within that defense attorney's scope of work, those updates would in no way negate the district court's explicit command that Miller appear for a status conference.

Blaming PACER access issues also carries no water for Miller. "A party has a duty of diligence to inquire about the status of a case." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993). He did not inquire about his case by, for example, calling the district court, even

though he was aware of the first status conference and did not attend it. More importantly, the record shows that his PACER account was deactivated on March 6, 2024—five days *after* the district court's March 1, 2024, minute entry informing Miller of the second status conference date. And thus, his PACER access issues fail to explain why he missed either of the status conferences.

Finally, to the extent Miller points to his lack of familiarity with federal procedure due to his *pro se* status, "a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." *Edward H. Bohlin Co.*, 6 F.3d at 357. Indeed, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). Rather, a *pro se* litigant "acquiesces in and subjects himself to the established rules of practice and procedure." *Id.* This is especially true when the court below specifically "emphasized to Plaintiff the need to be diligent in securing replacement counsel as he will be subject to all applicable rules and orders in his capacity as a *pro se* plaintiff."

Miller's proffered reasons, therefore, fail to persuade us that the district court abused its discretion in concluding that Miller's neglect was inexcusable. *See Edward H. Bohlin Co.*, 6 F.3d at 357 ("Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief.").

## III.

Next, Miller argues that dismissal of his suit with prejudice was unduly harsh. We review dismissals without prejudice for abuse of discretion, *Larson v. Scott*, 157 F.3d 1030, 1032 (5th Cir. 1998), but apply a heightened

standard of review to dismissals with prejudice, *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213 (5th Cir. 1976). Under that heightened abuse-of-discretion standard, dismissal is improper "unless the history of a particular case discloses both (1) a clear record of delay or contumacious conduct by the plaintiff, and (2) that a lesser sanction would not better serve the best interests of justice." *McNeal v. Papasan*, 842 F.2d 787, 790 (5th Cir. 1988). And "in most cases where this court has affirmed dismissals with prejudice, we found at least one of three aggravating factors: '(1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.'" *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (citation modified) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)).

To warrant dismissal, "delay must be characterized by 'significant periods of total inactivity.'" *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008) (quoting *McNeal*, 842 F.2d at 791). As for contumacious conduct, "it is the 'stubborn resistance to authority' which justifies a dismissal with prejudice." *Id.* (quoting *McNeal*, 842 F.2d at 792). When there is both, a court may need less of either. *See Pennie v. Giorgi for Dallas Morning News*, 841 F. App'x 655, 659 (5th Cir. 2021) ("Yet plaintiffs here were guilty not only of simple delay but of disobedience of a court order as well. In such a case, the amount of time elapsed obviously becomes less pivotal." (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 649 (1st Cir. 1990)).

Miller took no action in the case between August 22, 2023 (when he filed the motion to stay) and September 20, 2024 (when he missed the second status conference and moved to enroll new counsel)—inactivity of just over a year. To be sure, it could be argued that, because the case was stayed, the inactivity clock started running only on March 1, 2024, when Miller missed his first status conference. But that would ignore the magistrate judge's admonishment to Miller of "the need to be diligent in securing replacement

counsel." Nothing in the record indicates that he exercised such diligence, a fact particularly adverse to Miller since he is claiming his lack of counsel, at least in part, caused the neglect and error at issue.

While there is no bright-line rule on the requisite period of inactivity, we have held that eight months of inactivity could constitute delay justifying dismissal with prejudice. *Louisiana v. Sparks*, 978 F.2d 226, 233 (5th Cir. 1992). Conversely, we have reversed prejudicial dismissal where there was a "short delay" of ten months, but we did so considering, *inter alia*, that the plaintiff "had repeatedly called the district court for updates." *Haynes v. Turner Bass & Assocs.*, No. 20-40787, 2022 WL 2383855, at *1 (5th Cir. July 1, 2022) (per curiam) (unpublished).

Here, the period of inactivity exceeds that of *Sparks* without the redeeming circumstances in *Haynes*. In the year-long period, Miller was admittedly aware of the first status conference and failed to appear. And even though his PACER access issue did not transpire until after the notice of the second conference was published, he nevertheless failed to appear to the second status conference too. He neither sought counsel from his criminal defense attorney nor called the district court for updates, like the plaintiff in *Sparks*. In fact, Miller chastises the district court, arguing that "[a] phone call from the court notifying Mr. Miller of his continuing obligation after the first missed status conference would have prevented this dismissal." The district court was under no duty to make that call. Instead, it was Miller who had the "duty of diligence to inquire about the status" of his case, *Edward H. Bohlin Co.*, 6 F.3d at 357, and ultimately, he "bears a duty to protect his own legal interests," *Willis v. Honeywell, Inc.*, 62 F. App'x 557, 557 (5th Cir. 2003) (per curiam). He did not fulfill those duties, leading to this significant period of total inactivity.

As to contumacious conduct, we have recognized that "it is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious." *Millan*, 546 F.3d at 327 (quoting *McNeal*, 842 F.2d at 792). Instead, contumacy worthy of prejudicial dismissal requires "willful disobedience of a court order," *In re Deepwater Horizon*, 922 F.3d 660, 666 (5th Cir. 2019), behavior that "threaten[s] the integrity of the judicial process," *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982), or "no reasonable justification for the plaintiff's conduct.," *Lucero v. Wheels India, Ltd.*, No. 23-10494, 2023 WL 8622293, at *3 (5th Cir. Dec. 13, 2023) (unpublished).

Whether Miller's conduct demonstrates a clear pattern of contumacious conduct is a closer call. On the one hand, Miller "repeatedly refused to comply with court orders or appear at scheduled proceedings." *See Hope v. Patrick*, No. 19-50562, 2023 WL 3739100, at *5 (5th Cir. May 31, 2023) (per curiam) (unpublished). Indeed, he received notice of both the first status conference and the second yet failed to appear or file anything. Moreover, in the intervening time, Miller did not take any other action suggesting compliance, including exercising his diligence to secure counsel, or even call the district court to inquire about the status of his case. On the other hand, this case was and remains stayed pending Miller's criminal trial, and Miller could have done little more than enroll new counsel and appear at the status conferences.

On balance, and under the heightened abuse-of-discretion standard, we find that "the history of [this] particular case discloses . . . a clear record of delay [and sufficient] contumacious conduct by the plaintiff." *See McNeal*, 842 F.2d at 790; *see also Pennie*, 841 F. App'x at 659. Indeed, repeatedly defying court orders, with "no reasonable justification," *Lucero*, 2023 WL 8622293, at *3, "threaten[s] the integrity of the judicial process," *Rogers*, 669 F.2d at 320. And, of course, by failing to attend these status conferences,

Miller failed to keep the district court apprised of any status updates on his criminal case. That, in turn, deprived the district court of the ability to manage and plan its own docket. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1332 (5th Cir. 1996) ("It is well established that the district court is entitled [to] manage its court room and docket.").

The second element of the heightened standard asks whether a lesser sanction would not better serve the best interests of justice. *See Berry*, 975 F.2d at 1191. Miller claims that he "was not given any warning or opportunity to correct the procedural oversight, nor was he offered alternative sanctions such as a monetary fine or a specific warning of the potential dismissal." But the amended minutes of the first missed status conference, published on the docket, made clear that "[t]his matter will be dismissed for lack of prosecution on September 20, 2024, if Plaintiff fails to appear." As this court has previously held, a district court "more than adequately attempt[s] the lesser sanction of warning" when it "issue[s] an explicit warning of the risk of dismissal." *Pennie*, 841 F. App'x at 660. Here, the district issued such a warning to no avail.

Finally, this case contains an aggravating factor that we have found in other cases affirming dismissals with prejudice: delay caused by plaintiff himself and not his attorney. *See Berry*, 975 F.2d at 1191. Indeed, given that Miller was proceeding *pro se*—despite the district court's emphasis on his need to be diligent in securing counsel—he has no one else to blame.

## IV.

For the foregoing reasons, we find no reversible error in the district court's decision to dismiss Miller's case with prejudice and to deny his Rule 60(b)(1) motion. We thus AFFIRM.