# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2010

Charles R. Fulbruge III
Clerk

No. 09-50045

VIRDA BELL BULLARD; JOHN G. ALEXANDER; ELNORA BELL;
PAULLETTE BLAYLOCK; CHARLES H. BOOKER; ET AL.,

Plaintiffs–Appellants–Cross-Appellees

v.

BURLINGTON NORTHERN SANTA FE RAILWAY CO.; KOPPERS
INDUSTRIES INC.; MONSANTO CO.; DOW CHEMICAL CO.; VULCAN
MATERIALS CO.,

Defendants–Appellees–Cross-Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:08-cv-00724-SS

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Virda Bell Bullard, et al. (the "Bullard Plaintiffs") appeal the district court's sua sponte dismissal of their claims against Burlington Northern Santa Fe Railway Company, et al. (the "Defendants"). This is the fifth action against Defendants for personal injuries or property damage relating to Defendants' operation of a railroad tie treatment facility in Somerville, Texas. The district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court dismissed the Bullard Plaintiffs' claims without prejudice under Federal Rule of Civil Procedure 8 for failure to adequately plead their group litigation.

On appeal, the Bullard Plaintiffs argue that the district court's dismissal without prejudice operates as a dismissal with prejudice because the statute of limitations has run on some of their claims. The Bullard Plaintiffs contend that, because they have neither acted contumaciously nor engaged in dilatory tactics, we should find that the district court abused its discretion by dismissing their claims. Because the district court made no express findings as to whether the Bullard Plaintiffs acted with the requisite contumaciousness to warrant a de facto dismissal with prejudice, we vacate the district court's dismissal and remand with instructions to conduct further findings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

The Bullard Plaintiffs are 144 current or former residents of Somerville, Texas. At one time, Somerville housed the largest railroad tie plant in the United States. The Somerville facility began production in 1906, and the surrounding town developed in conjunction with its success. The Bullard Plaintiffs allege that while operating the Somerville facility, Defendants treated the wood used in production of the railroad ties with toxic chemicals that emanated from the plant and caused them to develop cancer.

Defendants are five separate companies involved in the ownership and operation of the Somerville facility. Defendant Koppers, Inc. ("Koppers") currently operates the facility. Prior to Koppers's operation, the Atchison, Topeka and Santa Fe Railway—the predecessor to Defendant Burlington Northern Santa Fe Railway Company ("BNSF")—ran the plant. The Bullard Plaintiffs allege that Defendants Monsanto Company, The Dow Chemical Company, and Vulcan Materials Company supplied the chemicals to the Somerville facility that caused their cancers.

B.    Prior Litigation Against Defendants

    1.    The "Davis Action"

In June 2005, a group of Somerville residents (the "Davis Plaintiffs") filed a putative class action lawsuit in the United States District Court for the Western District of Texas against Defendants.  The Davis Plaintiffs pled claims based on nuisance, trespass, strict products liability, negligence, and gross negligence, and sought compensation to finance periodic health monitoring and medical examinations.  The Davis Plaintiffs attempted to certify a class consisting of all Somerville residents who had suffered from the chemicals allegedly emanating from the Somerville facility.

The district court denied class certification in December 2005.  The Davis Plaintiffs subsequently amended their complaint and joined 602 individuals in a "mass action."  After determining that "Plaintiffs' complaint was . . . so vague . . . that [Defendants] cannot reasonably be required to frame a responsive pleading," the district court ordered the Davis Plaintiffs to provide a more definite statement and answers to eight interrogatories to compensate for the Davis Plaintiffs' failure "to include sufficient details regarding the nature of each individual's alleged exposure and injury."  The Davis Plaintiffs complied, but the district court found it "beyond argument that their responses to the interrogatories were grossly inadequate."  The district court, however, remained "unconvinced that Plaintiffs responded in bad faith."

The district court ordered each Davis Plaintiff either to file an individual complaint or dismiss his or her claim within thirty days, stating:

> This case is not a class action.  This case is not a mass tort action. After sixteen months and three tries at creating some form of group litigation, Plaintiffs have made clear to this Court that the only efficient and equitable means of trying their claims is in individual lawsuits.

In November 2006, the Davis Plaintiffs voluntarily dismissed their claims without prejudice.

2.    The "Batts Action"

In October 2007, a group of Somerville residents (the "Batts Plaintiffs") filed a putative class action complaint in the United States District Court for the Western District of Pennsylvania. The Batts Plaintiffs sued Defendant Koppers for damages arising from the same set of facts as those giving rise to the Davis Action. In November 2007, the Batts Plaintiffs voluntarily dismissed their claims.

3.    The "Brinston Action"

Also in October 2007, another group of Somerville residents (the "Brinston Plaintiffs") brought a putative class action alleging only property damage against Defendant BNSF in Texas state court based on the same facts alleged in the Davis and Batts Actions. BNSF removed the putative class action under the "mass action" provision of 28 U.S.C. §§ 1332(d)(11) and 1453, as amended by the Class Action Fairness Act of 2005 ("CAFA"), and the district court judge who heard the Davis Action received the assignment. The district court dismissed the Brinston Action without prejudice for lack of subject matter jurisdiction, holding that the Brinston Plaintiffs failed to establish standing and failed to bring suit within the applicable limitations period.

4.    The "Hamilton Actions"

In December 2007, a total of 544 Somerville residents (the "Hamilton Plaintiffs") filed six separate mass action complaints, each with less than one hundred named plaintiffs, against Defendants BNSF and Koppers in Texas state court. According to Defendants, "these filings 'literally lifted the caption from the Davis mass action [and] divided it six ways alphabetically.'" The district court opined that the Hamilton Plaintiffs deliberately filed each complaint with

fewer than one hundred plaintiffs in an attempt to avoid CAFA's mass action removal provision.

The Hamilton Plaintiffs alleged that BNSF and Koppers's liability arose from the same set of facts as alleged in the three previous complaints against Defendants, and asserted claims based on negligence, nuisance, trespass, gross negligence, and intentional infliction of emotional distress. Defendants BNSF and Koppers removed all six cases under the mass action provision of 28 U.S.C. §§ 1332(d)(11) and 1453, and the district court judge who heard both the Davis and Brinston Actions again received the assignment. After consolidating all six complaints, the district court denied the Hamilton Plaintiffs' motion to remand after Defendants BNSF and Koppers implored the court to reject the Hamilton Plaintiffs' attempt to plead around CAFA. In reaching this conclusion, the district court analogized the Hamilton Plaintiffs' actions to those seen in cases of fraudulent joinder and bad faith pleading.

In June 2008, the district court granted Defendants BNSF and Koppers's motion to instruct the Hamilton Plaintiffs to sever and file individual claims. Noting that the consolidated cases were "essentially identical" to the Davis Action and that the same pleading problems giving rise to the severance order in the Davis Action continued to exist, the district court allowed the Hamilton Plaintiffs thirty days to sever their claims. The district court also warned the Hamilton Plaintiffs that it would dismiss without prejudice any claims not severed in the given time frame. The Hamilton Plaintiffs took no action, and the district court dismissed the consolidated Hamilton Action in its entirety without prejudice.

C. The "Bullard Action"

1. State Court Proceedings

On October 31, 2007, the Bullard Plaintiffs filed a single mass action complaint in Illinois state court asserting personal injury claims nearly identical

to the Davis and Hamilton Actions. Although they did not attempt to certify a class, they based their claims on the same factual allegations against Defendants as in the other four actions and claimed that the chemicals used in operating the Somerville facility caused every Bullard Plaintiff to develop cancer. Defendants removed the Bullard Action to the United States District Court for the Northern District of Illinois under the mass action provision of 28 U.S.C. §§ 1332(d)(11) and 1453.

2.    Proceedings in the Northern District of Illinois

Once in federal court, Defendants moved to transfer the case to the Western District of Texas, while the Bullard Plaintiffs moved to voluntarily dismiss fifty-three plaintiffs and to remand the case back to state court. The Illinois district court denied the Bullard Plaintiffs' motion to remand. The Bullard Plaintiffs appealed the denial, and the Seventh Circuit affirmed. See Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759 (7th Cir. 2008).

On September 25, 2008, the Illinois district court granted Defendants' motion to transfer to the Western District of Texas. In the same order, the Illinois district court denied the Bullard Plaintiffs' motion for voluntary dismissal, finding that allowing the Bullard Plaintiffs to do so would not only subject Defendants to prejudice by forcing them to litigate suits based on the same claims in both state and federal court, but would also defeat the purposes of CAFA. The Illinois district court did, however, deny the Bullard Plaintiffs' voluntary dismissal motion without prejudice so that they could renew their motion in the Western District of Texas.

3.    Proceedings in the Western District of Texas

After the transfer, the same district judge who heard the Davis, Brinston, and Hamilton Actions again received the assignment for the case against Defendants. Approximately a month after the transfer, the district court sua sponte dismissed without prejudice the entire Bullard Action for failure to meet

the basic pleading requirements of Federal Rule of Civil Procedure 8. Specifically, the district court reiterated that the residents of Somerville could not style a group litigation against Defendants. Noting that the "Plaintiffs have made it abundantly clear through several separate cases" that they "either cannot or will not bring individual claims on their own behalf," the district court declined to enter another severance order, finding that the Somerville residents' failure to sever and file individually in the previous cases indicated that any such order would be futile.

The Bullard Plaintiffs filed a motion for reconsideration, arguing that their case differed significantly from the four previous complaints, and that they anticipated that if the dismissal without prejudice remained in its current form, Defendants would argue that the statute of limitations barred refiling. They also renewed their motion for voluntary dismissal that the Illinois district court had rejected, arguing that voluntary dismissal of 116 of the 144 total plaintiffs would toll the statute of limitations under Illinois law, while involuntary dismissal, even without prejudice, would not. The Bullard Plaintiffs admitted that upon a grant of their motion to voluntarily dismiss, they intended to refile their complaints in a manner that would avoid federal subject matter jurisdiction. In the alternative, the Bullard Plaintiffs asked the district court to enter the same severance order it had entered in the previous actions, and promised to sever and file individually if given the opportunity.

The district court denied the motion for reconsideration and scolded the Bullard Plaintiffs for their "abuse of the judicial system." Construing the Bullard Plaintiffs' motion for reconsideration as "yet another attempt by the Plaintiffs to circumvent the rulings of this and other courts," the district court stated that if the Bullard Plaintiffs wished to avoid the Illinois statute of limitations on their claims and file individually, they had previously been provided ample opportunity to do so, starting with the Davis Action. The district

court also chided the Bullard Plaintiffs for their renewed motion for voluntary dismissal, describing it as an attempt to circumvent the clear ruling of the Illinois district court. The district court concluded its order with a warning that sanctions would follow any further refiling against Defendants based on the same facts that resulted in another dismissal. The Bullard Plaintiffs appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under the mass action provision of 28 U.S.C. §§ 1332(d)(11) and 1453. "[W]e review the district court's decision to grant a motion to dismiss with or without prejudice only for abuse of discretion." Club Retro, LLC v. Hilton, 568 F.3d 181, 215 n.34 (5th Cir. 2009).

We have, however, "limited the district court's discretion in dismissing cases with prejudice." Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir. 1992). Specifically, we will only affirm dismissals with prejudice given "'a clear record of delay or contumacious conduct by the plaintiff,' . . . and where lesser sanctions would not serve the best interests of justice." Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir. 1982) (quoting Pond v. Braniff Airways, Inc., 453 F.2d 347, 349 (5th Cir. 1972)) (internal quotation marks omitted) (alteration in original). "Where further litigation [of a] claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard of review is used." McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 556 (5th Cir. 1981).

## III. DISCUSSION

A.    Waiver

In response to the Bullard Plaintiffs' statute of limitations argument, Defendants contend that the Bullard Plaintiffs failed to properly raise the issue before the district court. Additionally, Defendants argue that the Bullard Plaintiffs have provided no record basis to support their claim that the statute

of limitations will bar refiling. Based on these contentions, Defendants ask us to find that the Bullard Plaintiffs waived this argument.

The Supreme Court has stated that although "[i]t is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts[,] . . . this principle does not demand the incantation of particular words." Nelson v. Adams USA, Inc., 529 U.S. 460, 469 (2000) (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 174–75 (1988)). Instead, this principle only "requires that the lower court be fairly put on notice as to the substance of the issue." Id. In the Bullard Plaintiffs' motion for reconsideration—their earliest opportunity to do so—they requested that the district court consider the statute of limitations and accompanying tolling provisions. Our law does not require any more to prevent waiver.

Additionally, we have not required litigants to prove definitively that the statute of limitations would bar refiling of claims before treating a dismissal without prejudice as one with prejudice. In Boazman v. Economics Laboratory, Inc., we stated, "[w]here . . . the statute of limitations prevents or arguably may prevent a party from refiling his case after it has been dismissed, we fail to see how a dismissal without prejudice is any less severe a sanction than a dismissal with prejudice." 537 F.2d 210, 213 (5th Cir. 1976) (emphasis added).[1]

Illinois has a two-year statute of limitations for all personal injury claims, and the Bullard Plaintiffs brought this to the attention of the district court in their motion for reconsideration. See 735 ILL. COMP. STAT. 5/13-202. Because the Bullard Plaintiffs filed their state court complaint more than two years ago, the applicable limitations statute, at the very least, "arguably may prevent"

---

[1] See also Campbell v. Dretke, 261 F. App'x 702, 703 (5th Cir. 2008) (per curiam) (unpublished) ("Although the district court's dismissal of [the plaintiff's] complaint was without prejudice, a re-filed complaint would probably be barred by the applicable two-year statute of limitations, and, thus, the standard of review is the same as is used when reviewing a dismissal with prejudice.") (emphasis added) (citation omitted).

them from refiling if the district court's dismissal stands. See Boazman, 537 F.2d at 213. We conclude that the Bullard Plaintiffs' statute of limitations argument is properly before us, and we should thus treat the district court's dismissal as one with prejudice.

B.    Substantial Similarity of Prior Litigations

As a threshold matter, the Bullard Plaintiffs argue that the district court erred by considering every previous litigation against Defendants arising from the same factual allegations. Although the record reflects that all of the prior lawsuits filed against Defendants alleged substantially the same facts, involved substantially the same attorneys and law firms, and sought similar relief based on substantially similar injuries, there remain several unanswered questions.

Specifically, the record does not reflect the extent to which the prior actions against Defendants named the Bullard Plaintiffs or sought to represent their interests through the vehicle of a purported class action. For instance, although the Davis Action sought to certify a class that would encompass every current or former resident of Somerville—which would arguably include every Bullard Plaintiff—the district court denied certification. Although the 602 individual Davis Plaintiffs who subsequently proceeded against Defendants failed "to include sufficient details regarding the nature of each individual's alleged exposure and injury" and made "grossly inadequate" responses to the district court's interrogatories, the same cannot be said of the entire purported class.

Additionally, the plaintiffs in the Brinston Action sought certification of a substantially narrower class than that sought in the Davis Action. The Brinston Plaintiffs purported to represent only "persons who own property or lease property within [one] mile" of the Somerville plant and who "have had their person and/or property contaminated with . . . toxins released from the Somerville plant." Brinston v. Koppers Indus., 538 F. Supp. 2d 969, 972–73

(W.D. Tex. 2008) (internal quotation marks omitted). Furthermore, while most of the lawsuits against Defendants have sought damages for personal injury, the Brinston Action only sought compensation for property damage. Given this particular class definition and the current record—which does not suggest that the Brinston Action included any of the Bullard Plaintiffs—we cannot say with any certainty that the Brinston Action fairly represented those with an interest in the Bullard Action.

Simply put, we cannot determine from the record whether the district court was warranted in considering the totality of litigation against Defendants before it entered its dismissal. Without a clear finding of culpability as to each Bullard Plaintiff, we are unwilling "to affirm the harsh sanction of dismissal with prejudice" in a case where some of the plaintiffs may not have actually been blameworthy. Rogers, 669 F.2d at 323 (citing Blois v. Friday, 612 F.2d 938, 940 (5th Cir. 1980)). Accordingly, we must remand to the district court for an explicit determination of whether the prior lawsuits against Defendants adequately represented the interests of the individual Bullard Plaintiffs as to warrant holding the Bullard Plaintiffs accountable for the deficiencies of the prior actions.

C.    Clear Record of Delay or Contumacious Conduct

We have held that "dismissals with prejudice will be affirmed only upon a showing of 'a clear record of delay or contumacious conduct by the plaintiff, . . . and where lesser sanctions would not serve the best interests of justice.'" Rogers, 669 F.2d at 320 (quoting Pond, 453 F.2d at 349) (alteration in original). In most cases affirming dismissals with prejudice, we have also "found at least one of three aggravating factors: '(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.'" Berry, 975 F.2d at 1191 (quoting Price v. McGlathery, 792 F.2d 472, 474 (5th Cir. 1986)).

11

We have "recognized that 'delay which warrants dismissal with prejudice must be longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity.'" Millan v. USAA Gen. Indem. Co., 546 F.3d 321, 326–27 (5th Cir. 2008) (quoting McNeal v. Papasan, 842 F.2d 787, 791 (5th Cir. 1988)) (internal quotation marks omitted). Nothing in the record suggests that such a substantial delay occurred. We cannot affirm the district court's de facto dismissal with prejudice on the grounds of a clear record of delay.

Whether the Bullard Plaintiffs acted with the requisite degree of contumaciousness to warrant a dismissal with prejudice is a much closer question. We define contumacious conduct as a "'stubborn resistance to authority.'" McNeal, 842 F.2d at 792 (quoting John v. Louisiana, 828 F.2d 1129, 1132 (5th Cir. 1987)). We have also "recognized that 'it is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious.'" Millan, 546 F.3d at 327 (quoting McNeal, 842 F.2d at 792).

Considering this case in isolation, we cannot say, based on the record before us, that the Bullard Plaintiffs' actions amounted to contumacious conduct. A review of the record reveals that nothing more than numerous entries of appearance on behalf of counsel and motions for admission pro hac vice occurred between the transfer of this case to the Western District of Texas and the dismissal. If we limit our review to Bullard Action in isolation, the Bullard Plaintiffs clearly had little chance to act with the "stubborn resistance to authority" that would warrant a dismissal with prejudice. McNeal, 842 F.2d at 792 (quoting John, 828 F.2d at 1132).

If, however, we consider the actions of the Bullard Plaintiffs in combination with the actions of the Davis, Batts, Brinston, and Hamilton Plaintiffs, the record as a whole suggests that the Bullard Plaintiffs may have stretched the bounds of acceptable litigation conduct to the point where we

should allow the district court to invoke "such a severe sanction that . . . is to be used only in extreme circumstances." Boazman, 537 F.2d at 212 (citation omitted). The plaintiffs in the Davis and Hamilton Actions—many of whom also appear in the Bullard Action—failed to comply with the district court's orders to file a more definite statement, to adequately answer interrogatories, and to sever their cases into individual claims. Although an isolated failure may warrant excuse, we sympathize with the district court as it received its fourth assignment in two years of nearly identical group litigations with similar pleading problems.

Even this conclusion, however, is less than clear given the record before us. Despite the district court's frustration, it acknowledged that the Bullard Plaintiffs' counsel had put forth a "Herculean effort" in attempting to bring a group litigation. Because the actions filed against Defendants involved "so many plaintiffs, time periods, and possible causes of action at issue," the district court likened the task to "herding . . . [a] beast." This language suggests that the exceeding complexity of the case—and not contumaciousness—resulted in the pleading problems lamented by the district court.

Additionally, the dates that the residents of Somerville filed the five actions caution against finding contumaciousness. Although the Davis Plaintiffs filed their complaint in 2005, the Batts, Brinston, Bullard, and Hamilton Actions were all filed over the course of three months in 2007, and the separate actions essentially made their way through the litigation process simultaneously. The Hamilton Plaintiffs actually filed their complaint two months after the Bullard Action. This temporal proximity suggests that we should not fault the Bullard Plaintiffs for failing to correct repetitive pleading deficiencies when they had little time to do so.

Because dismissal with prejudice is "an extreme sanction that deprives a litigant of the opportunity to pursue his claim," Gonzalez v. Firestone Tire &

Rubber Co., 610 F.2d 241, 247 (5th Cir. 1980), our caselaw has emphasized the need for clear factual findings from the district court. See McNeal, 842 F.2d at 792 ("[W]e must review the specific facts which, in each case, led to [dismissal].") (emphasis added)); Hornbuckle v. Arco Oil & Gas Co., 732 F.2d 1233, 1237 (5th Cir. 1984) ("[F]indings of fact are essential for our consideration of the inevitable argument that the dismissal was an abuse of . . . discretion."). The district court has, in no uncertain terms, documented its frustration with the string of litigation against Defendants. It has not, however, made any specific finding of contumaciousness or weighed the existence of any aggravating factors.

In light of our reluctance to permanently deprive a litigant of his or her claim, we will not affirm the district court's de facto dismissal with prejudice in this case unless it expressly determines that lesser sanctions would not suffice. See Berry, 975 F.2d at 1191. Therefore, we vacate the dismissal and remand for further findings by the district court on contumaciousness, aggravating circumstances, and whether lesser sanctions would better serve the interests of justice. See id. at 1191–92.

In making these additional findings, the district court shall specifically consider the degree of similarity of the prior litigations to the instant case. In addition, the district court shall specifically determine the degree of similarity of the individual Bullard Plaintiffs to the Davis, Batts, Brinston, and Hamilton Plaintiffs to determine whether the prior lawsuits fairly represented the Bullard Plaintiffs. We trust that the district court, which is abundantly familiar with these litigants, can make this express and explicit determination better than we can.

## IV. CONCLUSION

The Bullard Plaintiffs have tested the patience of the district court, and we are not unsympathetic with its frustration. We therefore task the district court with determining whether the Bullard Plaintiffs' conduct warrants

dismissal with prejudice upon express findings as to whether the Bullard Plaintiffs should be held accountable for the deficiencies in the prior lawsuits and as to contumacious conduct.

VACATED and REMANDED.